## Staunton.

C. I. T. CORPORATION v. COMMONWEALTH OF VIRGINIA
AND ONE NASH COUPE, SERIAL NO. 430,094,
MOTOR NO. 74,761.

September 19, 1929.

Absent, West, J.

The opinion states the case.

*Woods, Chitwood, Coxe & Rogers, L. G. Muse,* and *J. G. Myerson,* for the plaintiff in error.

*John R. Saunders, Attorney General,* and *Leon M. Bazile* and *Edwin H. Gibson, Assistant Attorneys General,* for the Commonwealth.

PRENTIS, C. J., delivered the opinion of the court.

The C. I. T. Corporation, hereinafter called the lienor, complains of a judgment forfeiting to the Commonwealth one Nash coupe, which was found in this State transporting ardent spirits contrary to law.

The information against the automobile having been filed, the lienor obtained permission to intervene as a party defendant thereto, and filed its answer, in which it sought to set up a valid lien against the automobile. The attorney for the Commonwealth filed a demurrer to the company's answer, which the court sustained (under Code 1924, section 4675 (28) as amended), and entered the order confiscating the automobile which is here complained of, upon the ground "that Hillary C. Davis, the owner of said automobile, was neither a

resident of the State of Virginia nor of the District of Columbia, and had not perfected his title to said automobile in either of said places prior to its seizure or within ten days from the time same was acquired."

The answer of the lienor avers that it is a corporation duly organized under the laws of New York and authorized to deal in what is commonly known as automobile commercial paper; that for valuable consideration it became the assignee of a certain conditional sale contract and became also the assignee and legal holder of a negotiable note drawn by Hillary C. Davis, representing the deferred purchase price of the automobile; that before it became the assignee of the contract between the vendor and Davis it made inquiries for the purpose of ascertaining whether or not he had the reputation of violating the State and national prohibition laws, as the result of which it was not even intimated that he had ever violated those laws or had been suspected of doing so; that the conditional sale contract was duly recorded in Wyoming county, West Virginia, in accordance with the laws of that State pertaining to the recordation of conditional sale contracts, in order to preserve the lien retained and secured thereby; that pursuant to the contract the entire amount of the note had been declared to be due; that Davis was and is a citizen of West Virginia, where he has resided for four years; that he had perfected and registered his license for the automobile in accordance with the laws of the State of West Virginia prior to its seizure in this State; that the lienor is authorized under the laws of Virginia to transact business in this State; that it was ignorant of the fact that the automobile was being used for illegal purposes; that its lien is *bona fide*; and the answer contained every other allegation necessary to show that it claimed to be a *bona fide*

holder of said note and lien and entitled to the protection afforded by law to other innocent holders of such liens. It is to this answer that the demurrer referred to was sustained, for the reason already stated.

The lienor excepted to this judgment of the court in sustaining the demurrer to its answer upon these grounds:

"(1) That section 4675 (28), 1928, Michie's Supplement to the Virginia Code of 1924, is contrary to the Constitution of the United States, in that it—

"(a) . Denies to the company equal protection of the laws of the State of Virginia; and

"(b) Deprives the company of its property without due process of law; and

"(2) Is contrary to section 11 of the Constitution of Virginia, as

"(c) Depriving the company of its property without due process of law."

So much of the statute referred to as it is necessary for us to consider is found in clauses "h" and "i", amended Acts 1928, pages 990-995, chapter 374 (amending Code 1924, section 4675 (28), as amended).

Clause "h" refers to the claim of the owner, and provides that if he was "the actual *bona fide* owner of said conveyance at the time of seizure, that he was ignorant of such illegal use thereof, and that such illegal use was without his connivance or consent, express or implied, and that such innocent owner is a resident of the State of Virginia, or of the District of Columbia, and has perfected his title to the conveyance, if it be a motor vehicle, prior to its seizure, or within ten days from the time the same was acquired, and such owner a resident of Virginia, in the office of the division of motor vehicles of the State of Virginia, then the court shall relieve the conveyance from the

forfeiture and restore it to the innocent owner upon the payment by him of the costs, etc.

The clause pertinent to this case, the benefit of which the lienor here claims, is clause "i", and so much of it as it is necessary to consider for present purposes reads: "If any such claimant be a lienor, and if it shall appear to the satisfaction of the court that the owner of the conveyance is a resident of the State of Virginia, or of the District of Columbia, and has perfected his title to the conveyance, if it be a motor vehicle, prior to its seizure, or within ten days from the time same was acquired, and such owner a resident of Virginia, in the office of the division of motor vehicles of the State of Virginia, and that such lienor was ignorant of the fact that such conveyance was being used for illegal purposes when it was so seized; that such illegal use was without such lienor's connivance or consent, express or implied; that at the time he acquired said lien he did not know, and had no reason to believe or suspect, that the owner of said conveyance had ever been guilty of, or was suspected of. violating any prohibition law, or that such owner intended to use, or contemplated using, or permitting any other person to use such conveyance for any unlawful purposes, and that he held a *bona fide* lien on said property and had perfected the same in the manner prescribed by law prior to such seizure (if such conveyance be an automobile the memorandum of lien on the certificate of title issued by the Motor Vehicle Commissioner of Virginia on said automobile shall make any other recordation of same unnecessary), the court shall, by an order entered of record, establish said lien upon satisfactory proof of the amount thereof."

The question of law presented, then, is whether or not, in this case, the owner, Davis, not being a resident

either of the State of Virginia or of the District of Columbia, but a resident of West Virginia, the lienor, C. I. T. Corporation, holding a valid lien on the automobile under the laws of the State of West Virginia, is entitled to relief from the forfeiture of the vehicle under section 4675, subsection 28, of the Virginia Code as amended.

The contention is that so much of the section as expressly recognizes the validity of the lien should the owner of the vehicle be a resident of the District of Columbia or the State of Virginia, and by necessary implication refuses to recognize the validity of the lien if the owner of the automobile should be a resident of the State of West Virginia, or any other State, is arbitrary and capricious and deprives the lienor of the equal protection of the laws of the State of Virginia, contrary to the fourteenth amendment, and that it takes its property without due process of law, contrary to the fourteenth amendment of the Constitution of the United States and the eleventh section of the Virginia Constitution 1902.

So much has been said and written on such questions by the Supreme Court of the United States, and by many other courts, that the general rules applicable must be considered as determined. The only matter left for determination is the application of these rules to the facts of cases as they arise.

■ This general statement of the nature and purpose of the guaranty of the fourteenth amendment appears in 4 Ency. Sup. Ct. Rep., page 354: "The equality of the rights of citizens is a principle of republicanism. Every republican government is in duty bound to protect all its citizens in the enjoyment of this principle, if within its power. The equal protection of the laws is a right now secured to every person

without regard to race, color, or previous condition of servitude; and the denial of such protection by any State is forbidden by the supreme law of the land. The fourteenth amendment, in declaring that no State 'shall deprive any person of life, liberty, or property without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws,' undoubtedly intended not only that there should be no arbitrary deprivation of life or liberty or arbitrary spoliation of property, but that equal protection and security should be given to all under like circumstances in the enjoyment of their personal and civil rights; that all persons should be equally entitled to pursue their happiness and acquire and enjoy property; that they should have like access to the courts of the country for the protection of their person and property, the prevention and redress of wrongs and the enforcement of contracts; that no impediment should be interposed to the pursuits of anyone except as applied to the same pursuits by others under like circumstances; that no greater burdens should be laid upon one than are laid upon others in the same calling and condition * * *."

██ This language from *Barbier* v. *Connolly*, 113 U. S. 27, 5 S. Ct. 357, 359, 28 L. Ed. 923, has been frequently quoted with approval: "The fourteenth amendment, in declaring that no State 'shall deprive any person of life, liberty or property without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws,' undoubtedly intended, not only that there should be no arbitrary deprivation of life or liberty or arbitrary spoliation of property, but that equal protection and security should be given to all under like circumstances in the enjoyment of their personal and civil rights;

that all persons should be equally entitled to pursue their happiness and acquire and enjoy property; that they should have like access to the courts of the country for the protection of their persons and property, the prevention and redress of wrongs, and the enforcement of contracts; and that no impediment should be interposed to the pursuits of anyone except as applied to the same pursuits by others under like circumstances; that no greater burdens should be laid upon one than are laid upon others in the same calling and condition, and that in the administration of criminal justice no different or higher punishment should be imposed upon one than such as is prescribed to all for like offenses. But neither the amendment, broad and comprehensive as it is, nor any other amendment, was designed to interfere with the power of the State, sometimes termed its 'police power,' to prescribe regulations to promote the health, peace, morals, education and good order of the people, and to legislate so as to increase the industries of the State, develop its resources and add to its wealth and prosperity. From the very necessities of society, legislation of a special character, having these objects in view, must often be had in certain districts, such as for draining marshes and irrigating arid plains. Special burdens are often necessary for general benefits, for supplying water, preventing fires, lighting districts, cleaning streets, opening parks, and many other objects. Regulation for these purposes may press with more or less weight upon one than upon another, but they are designed, not to impose unequal or unnecessary restrictions upon any one, but to promote, with as little individual inconvenience as possible, the general good. Though, in many respects, necessarily special in their character, they do not furnish just ground of complaint if they operate alike

upon all persons and property under the same circumstances and conditions. Class legislation, discriminating against some and favoring others, is prohibited; but legislation which, in carrying out a public purpose, is limited in its application, if within the sphere of its operation it affects alike all persons similarly situated, is not within the amendment."

There is no doubt whatever that corporations are entitled to the equal protection of the laws as persons, if within the jurisdiction of the State. *Kentucky Finance Corp.* v. *Paramount Auto Exch. Corp.*, 262 U. S. 544, 43 S. Ct. 636, 67 L. Ed. 1112; *Blake* v. *McClung*, 172 U. S. 239, 19 Sup. Ct. 165, 43 L. Ed. 432; *Southern R. Co.* v. *Greene*, 216 U. S. 400, 30 Sup. Ct. 287, 291, 54 L. Ed. 541, 17 Ann. Cas. 1247.

That this lienor, as a foreign corporation duly authorized to transact business within the State of Virginia, is entitled to the protection of these constitutional guaranties cannot be doubted.

These general propositions are not denied by the Commonwealth, but it is claimed that under the police power of the State reasonable classifications may nevertheless be made, and that the statute involved merely makes a classification which is reasonable; that all who fall within the classification are afforded equal protection of the law and are not deprived of their property without due process; and that those who fall without the classification have no right to complain.

In *Connolly* v. *Union Sewer Pipe Company*, 184 U. S. 540, 22 Sup. Ct. 431, 441, 46 L. Ed. 679, it appears that the State of Illinois had passed an antitrust law, regulating the operation of certain trusts and combinations, but excluding from the provisions of the act agricultural products and live stock while in the hands of the producer or raiser. In referring to this rule of

classification, this is said there: "Under what rule of permissible classification can such legislation be sustained as consistent with the equal protection of the laws? * * * We conclude this part of the discussion by saying that to declare that some of the class engaged in domestic trade or commerce shall be deemed criminals if they violate the regulations prescribed by the State for the purpose of protecting the public against illegal combinations, formed to destroy competition and to control prices, and that others of the same class shall not be bound to regard those regulations, but may combine their capital, skill and goods to destroy competition and to control prices for their special benefit, is so manifestly a denial of the equal protection of the laws that further or extended argument to establish that position would seem to be unnecessary."

Mr. Justice Brewer, in *Cotting* v. *Godard*, 183 U. S. 111, 22 Sup. Ct. 30, 43, 46 L. Ed. 109, said this: "But while recognizing to the full extent the impossibility of an imposition of duties and obligations mathematically equal upon all and also recognizing the rights of classification of industries and occupations, we must nevertheless always remember that the equal protection of the laws is guaranteed, and that such equal protection is denied when upon one of two parties engaged in the same kind of business and under the same conditions burdens are cast which are not cast upon the other."

██ The conceded right of the State to make reasonable classifications in the exercise of its police power is thus stated in *Lindsley* v. *Natural Carbonic Gas Co.*, 220 U. S. 61, 31 S. Ct. 337, 340, 55 L. Ed. 377, Ann. Cas. 1912C, 160: "The rules by which this contention must be tested, as is shown by repeated

decisions of this court, are these: 1. The equal-protection clause of the fourteenth amendment does not take from the State the power to classify in the adoption of police laws, but admits of the exercise of a wide scope of discretion in that regard, and avoids what is done only when it is without any reasonable basis, and therefore is purely arbitrary. 2. A classification having some reasonable basis does not offend against that clause merely because it is not made with mathematical nicety or because in practice it results in some inequality. 3. When the classification in such a law is called in question, if any state of facts reasonably can be conceived that would sustain it, the existence of that state of facts at the time the law was enacted must be assumed. 4. One who assails the classification in such a law must carry the burden of showing that it does not rest upon any reasonable basis, but is essentially arbitrary."

This clarifying expression from *Southern Ry. Co.* v. *Greene, supra,* is helpful: "While reasonable classification is permitted without doing violence to the equal protection of the laws, such classification must be based upon some real and substantial distinction, bearing a reasonable and just relation to the things in respect to which such classification is imposed; and classification cannot be arbitrarily made without any substantial basis. Arbitrary selection, it has been said, cannot be justified by calling it classification. *Gulf, C. & S. F. R. Co.* v. *Ellis,* 165 U. S. 150, 155, 165, 41 L. Ed. 666, 668, 671, 17 Sup. Ct. Rep. 255."

That this classification in favor of those who hold liens on cars whose owners are residents of the District of Columbia and against those who hold liens on cars whose owners are residents of West Virginia is arbitrary cannot be doubted. When a classification is

shown to be without any adequate determining principle, it is generally difficult, if not impossible, to establish the contention that it is nevertheless a reasonable exercise of discretion.

We are told in the brief of the Commonwealth that the courts in Texas, Michigan, Pennsylvania and Louisiana refuse to recognize the customary comity as to liens valid in other jurisdictions, and as there is no statute authorizing their recognition, foreign liens are not enforced in those States. We suppose there can hardly be any doubt that the State of Virginia could by statute do likewise and require its courts to refuse to enforce any foreign liens in such cases. It has, however, by statute, directed the courts to recognize and enforce such liens as are here involved, if the owner of the automobile happens to be a resident of the District of Columbia (or Commonwealth of Virginia). There is no suggestion that the residents of the other adjacent jurisdictions, Maryland, West Virginia, Tennessee, Kentucky and North Carolina are differently situated, or any less worthy of the favor which is by this statute extended to holders of liens on cars owned by residents of the District of Columbia. In its practical application, unconstitutional discriminations would necessarily result. Two citizens of Virginia, each the *bona fide* owner of separate liens against two automobiles, one of which is owned by a resident of the District of Columbia, and the other by his neighbor immediately across the line, a resident of the State of Maryland, and if this statute be constitutional as a valid classification, the owner of the lien on one of the automobiles would have his lien protected by the laws of Virginia and the owner of the other lien would be denied that protection.

██ Illustrations could be multiplied to show the

manifest discrimination, not only as between our own citizens, but as to others, all of whom are entitled to the equal protection of the law. The constitutional guaranties, however, may be invoked by and for all who are similarly situated. It seems to us that there can be little question that the contention of the lienor here is soundly based. Subject as it is to the jurisdiction of the State, and therefore entitled to the protection of the State and Federal Constitutions, it would be, if this statute be valid, denied the equal protection of the laws, and its lien would be destroyed without due process of law. The State has directed its courts to protect the liens of all *bona fide* holders in case the owner of the car resides in the District of Columbia; therefore, the United States and State Constitutions guarantee the equal protection of its laws to the *bona fide* holder of this lien, and this cannot be denied merely because the owner of the automobile happens to be a resident of West Virginia.

The judgment sustaining the demurrer to the answer of the lienor will, therefore, be reversed, and the case remanded for such further proceedings as may be appropriate.

*Reversed; remanded.*