# Richmond

## COMMERCIAL CREDIT COMPANY v. COMMONWEALTH OF VIRGINIA.

November 13, 1930.

Present, Campbell, Holt, Epes, Hudgins and Gregory, JJ.

*C. B. Cushing,* for the plaintiff in error.

*H. H. Byrd,* and *John R. Saunders, Attorney-General, Edwin H. Gibson* and *Collins Denny, Jr., Assistant Attorneys-General,* for the Commonwealth.

Epes, J., delivered the opinion of the court.

The Commercial Credit Company, a corporation hereinafter called the lienor, complains of a judgment of the Circuit Court of Bath county forfeiting to the Commonwealth one Ford coupe belonging to J. R. Thacker, hereinafter referred to as the car, which was found in this State transporting ardent spirits contrary to law.

The material facts are as follows: The car here in question was seized in Bath county by Luther Hepler and W. W. Otten. Hepler was the sheriff of Alleghany county. Prior to April, 1929, Otten had qualified as his deputy; but in March, 1929, he was appointed by the Attorney-General a

State prohibition inspector, and qualified as such in April, 1929. However, after his qualification as State prohibition inspector, Otten continued to serve as deputy sheriff of Alleghany county and was so serving on September 21, 1929.

On the morning of September 21, 1929, Sheriff Hepler and W. W. Otten went in Sheriff Hepler's car to a point on the Hughes Gap road, which runs practically on the line between Bath and Alleghany counties. Shortly after noon they saw the car here in question, driven by J. R. Thacker, approaching them from the Bath county side of the line. This car stopped in the Hughes Gap road, but whether on the Bath side or the Alleghany side of the road the witnesses were unable to say with certainty. When the car stopped, a man, named Byas Ryder, got out of the car carrying a bag or sack with something heavy in it. Hepler and Otten directed him to halt and drove past the car, following him. Ryder dropped the bag and ran, and the officers, leaving their car standing, pursued Ryder, but he made good his escape. Upon examination the officers found that the bag contained two jugs of corn whiskey, of which they took possession.

Ryder dropped the bag on one side of the Hughes Gap road and certainly within a few feet of the Alleghany-Bath county line. The witnesses testify that they think it was dropped in Alleghany county, but that they did not know the exact location of the line at this point.

While this was going on Thacker turned the car here in question around and drove it back into Bath county. Having failed to capture Ryder, the officers followed Thacker's car. The car had gotten out of sight when they started to follow it; but having recognized Thacker as the driver of the car the officers turned up Thacker Hollow, a feeder to Hughes Gap road, and about a mile from where Ryder had gotten out of the car with the whiskey they

found the car here in question parked on the side of the road, in Bath county, about 100 yards from the residence of Sarah Thacker, an aunt of J. R. Thacker. Thacker was not in the car when the officers arrived, and has not been seen since.

When the officers found the car in front of Sarah Thacker's residence they searched it, but found nothing contraband in it. Just how long it was between the time the whiskey was taken out of the car by Ryder and the time the car was searched in front of Sarah Thacker's home is not stated; but it is evident from the testimony of the witnesses that only a comparatively short time had elapsed between the two events.

Hepler and Otten seized the car and towed it to Covington, in Alleghany county, Virginia. Later they notified the sheriff and Commonwealth's attorney of Bath county that they had the car; but they did not deliver the car to the Bath county officials until the morning of November 20, 1929, two days before the trial was had on this information.

The Commonwealth's attorney of Bath county, after receiving notice of such seizure, filed an information against the seized property, praying that it be condemned and sold to enforce the forfeiture thereof.

The information states that the Ford coupe here in question "was seized by authorized officers, which said automobile was then and there used to transport ardent spirits illegally, and to transport ardent spirits for an illegal use, by J. R. Thacker, in Bath county, Virginia."

J. R. Thacker has never appeared or filed any pleadings in this proceeding; but the Commercial Credit Company filed its demurrer to said information and its answer under oath, setting up its claim as a lienor holding a lien on said car. The record does not contain the demurrer or answer, but the bills of exception state that they were filed.

The Commercial Credit Company introduced only one

witness, Mr. Batcheldor, whose testimony as set forth in Bill of Exception No. 1 is:

"He represents the Commercial Credit Company of Baltimore, Maryland, which company financed the purchase of this car from the Rainelle Motor Company, of Rainelle, West Virginia. This company made the usual inquiries as to the occupation and financial responsibility of J. R. Thacker and found that he was a coal miner, and that his wages amounted to about $200 per month. It learned nothing to his discredit and advanced the price of the car, having had Thacker sign a contract and a note, which contract gave the company the right to seize the car if the installments fixed in the contract were not promptly paid when due. This contract, however, is not recorded in West Virginia, and of course not in Virginia, as Thacker lived and lives in West Virginia. The defendant company has not the title papers to said car, but only the contract and the note aforesaid. Thacker is several installments in arrears and the total he owes for the car is $407.35. Company claims the right to take possession of the car under the lien reserved in the contract."

The "company had no notice and had no reason to suspect and did not suspect that the car would be used illegally and has acted in absolute good faith."

This testimony and the papers mentioned therein constitute all the evidence introduced bearing on the lien claimed by the appellant.

The court entered judgment forfeiting the car and directing the sheriff to make sale thereof. To this judgment the Commercial Credit Company has been granted a writ of error.

The first and fourth assignments of error raise, in different forms, the same question of law. The first assignment of error is that the court erred in refusing to sustain the demurrer on the ground that the information did not

allege that ardent spirits were found in the car "*at the time of the seizure thereof;*" and the fourth assignment of error is that the court erred in not entering judgment entirely relieving said car from forfeiture, because the evidence showed that no ardent spirits were found in the car "*at the time of the seizure thereof.*" The plaintiff in error bases this contention upon the language of subsections a, f, g, h, and i of section 28 of the Virginia statute concerning intoxicating liquors (Acts 1924, chapter 407), as amended by Acts 1928, chapter 374, pages 990–995, 1928 Supp. Va. Code, section 4675 (28), subsections a, f, g, h, i.

Subsection (a) provides as follows: "Where any officer, charged with the enforcement of the prohibition laws of this State, shall have reason to believe that ardent spirits are, contrary to law, in any conveyance of any kind * * it shall be the duty of such officer to search such conveyance, and if ardent spirits be found therein, contrary to the provisions of this act, he shall seize the same, and shall also seize and take possession of such conveyance * * and the said conveyance and other property so seized shall be deemed forfeited to the Commonwealth."

Subsection (f) provides that any person claiming to be the owner of such seized property or to hold a lien thereon, may appear and show any cause which he may have against the forfeiture of said property.

Subsection (g) provides as follows: "If such claimant shall deny that ardent spirits were in such conveyance, at the time of seizure thereof, contrary to law," and if the jury or judge trying the issue "shall so find, the judgment of the court shall be to entirely relieve said property from forfeiture, and no costs shall be taxed against said claimant."

Subsection (h) provides that if the jury or the court trying said issue "shall find against the claimant, or if it be admitted by the claimant that said conveyance, at the time of the seizure, contained ardent spirits," yet if the

claimant be an innocent owner, then under certain conditions therein mentioned, the court shall relieve said conveyance from forfeiture and restore it to such innocent owner upon the payment by him of the costs.

Subsection (i) provides that if any such claimant be a lienor and "such lienor was ignorant of the fact that such conveyance was being used for illegal purposes when it was so seized," then under certain conditions therein stated the lienor shall be entitled to the car or to the payment of his lien out of the proceeds thereof.

█ The language of these sections makes it plain that a seizure and forfeiture is only authorized for a present violation of the prohibition laws; and that a car which, at the time it is sought to seize it, contains no intoxicating liquor may not be seized on the ground that at some past time it had been used unlawfully to transport intoxicating liquor. *Edmondson* v. *Com.*, 141 Va. 404, 126 S. E. 54; *Chrysler Roadster* v. *Com.*, 152 Va. 508, at page 517, 147 S. E. 243.

The *Edmondson Case* was decided under section 57 of the Mapp act (Acts 1922, chapter 345); but the language of the forfeiture sections of said act of 1928, here under consideration, is so similar to that of section 57 of the Mapp act, that what is there said is applicable to forfeiture sections of the act of 1928. In that case the court, in holding that under the Mapp act there could be no forfeiture of the car on the facts of that case, says, at page 409 of 141 Va., 126 S. E. 54, 55:

"It will be noted that the language of the act contemplates a present transportion. The words 'are being illegally transported,' 'found therein' and 'are being transported for an illegal purpose,' denote clearly a legislative intent to deal with present violations and not past offenses. Also the words 'in which such liquor shall be found,' contained in the clause excepting barges, tugs, or small craft, owned

and operated by railroad or steamboat companies, to our mind point to a present violation rather than to a past one. Had the legislature intended the act to apply to past transportation of ardent spirits it would have said so in unmistakable language."

However, the principle decided in the *Edmondson Case* has no application to the case at bar. In the *Edmondson Case* the transportation for which the car was seized took place on April 19th, and the car was seized on April 20th. The facts and circumstances of that case unmistakably fix the violation of law for which the seizure was made as a past violation. In the instant case, under anything but the most technical construction, the violation of the law for which the car was seized was a present violation of the law.

These sections are to be given a reasonable interpretation; and when so interpreted they do not require that intoxicating liquor shall be in the car at the very moment that it is brought to a stop so that physical possession and control can be taken of it. For instance, although during the pursuit of a liquor laden car all the cargo be thrown out before the officers can bring it to a halt to take physical possession thereof and search it, yet when brought to a halt it may be seized and forfeited. In such a case the violation of the law, the pursuit, and the seizure, in contemplation of law, all constitute one continuous chain of present events.

The fact that in the instant case the officers turned aside from the pursuit for a short time in an attempt to arrest Ryder is not sufficient to break the legal continuity of the discovery of the violation, the pursuit, and the seizure. The court did not err in holding that under the facts of this case the statute authorized a seizure and forfeiture of this car.

The second assignment of error is that the Circuit

Court of Bath county was without jurisdiction to adjudge a forfeiture of this car. The contention of the appellant as set forth in its brief is as follows:

"The statute requires the car to be seized when and where the liquor is found therein. This liquor is not proven to have been found in Bath county, but in Alleghany county. Both officers say that Ryder left the car in Alleghany county and dropped the liquor there. If the *situs* of the discovery rules, Bath county had no jurisdiction, and the case should have been turned over to Alleghany. The statute provides that the officer making seizure and finding liquor shall turn the liquor over to the sheriff of the county and shall notify the Commonwealth's attorney. If, therefore, when the car stopped it was in Alleghany, and the liquor was found in the car, the report should have been made to Alleghany county officials and Bath has no jurisdiction. The mere fact that some one after the liquor was found seized the car and ran into Bath county with it should not deprive Alleghany of her jurisdiction. If Alleghany had jurisdiction, then the advertisement in Bath was illegal, the information was illegal, the trial was illegal, and the judgment is illegal."

This contention is without merit. When the car came to a stop in the Hughes Gap road and Ryder took the whiskey out, it was certainly within a few feet (six feet the witnesses say) of the Alleghany-Bath county line and had just come to that point from what is unquestionably Bath county. Section 4771, Code 1919, provides that where an offense is committed on the boundary of two counties or within 100 yards thereof, it may be prosecuted and punished in either county. This statute, we think, is applicable as well to information proceedings for the forfeiture of an automobile while being used in the illegal transportation of intoxicating liquors as to prosecutions of the persons operating the automobile for the transportation of the

liquor. But independent of this, the car just previous to the time it crossed the line was in Bath county with intoxicating liquors in it, and it returned, immediately after it was halted, to Bath county, while the officers were pursuing Ryder who had escaped with the liquor, and was seized in Bath county.

The third assignment of error is that the court erred in holding that there had been any valid seizure of the car by an "officer charged with the enforcement of the prohibition laws of this State," because the seizure of the car was made by Sheriff Hepler of Alleghany county and W. W. Otten, his deputy, in Bath county, in which county they had no more authority than any other citizen.

By section 94 of chapter 407, Acts 1924, the Attorney-General is empowered to appoint deputies and inspectors; and by section 92 of said act it is provided that "for the purposes of this act the Attorney-General, and his assistants, attorneys, agents, inspectors, or other employees, shall have the power of sheriffs and special police." Under these provisions the jurisdiction of such prohibition officers in matters relating to the enforcement of the prohibition laws is State-wide.

By section 2702, Virginia Code 1919, as amended by Acts 1924, page 554, chapter 385, it is provided: "No person holding the office of county treasurer, sheriff, attorney for the Commonwealth * * or supervisor shall hold any other office, elective or appointive, at the same time" (with certain exceptions which do not include a State prohibition inspector) "and if any person shall be elected or appointed to two or more offices, except as herein provided, his qualification in one of them shall be a bar to his right to qualify in any of the offices above enumerated, and if any person while holding any of such offices shall be appointed or elected to any other office, his qualification in such office shall thereby vacate any of the above offices he then holds, except as provided above."

Otten qualified as State prohibition inspector after he had qualified as deputy sheriff.

It is not necessary here to pass upon the question of what effect his qualification as State prohibition inspector had on his status as deputy sheriff; but in view of the policy of the law as declared in said section, it would appear that when a person holding the office of deputy sheriff is appointed and qualifies as State prohibition inspector he should thereupon resign as deputy sheriff. However, whatever effect Otten's qualifications as State prohibition inspector may have had on his status as deputy sheriff, upon such appointment he became a State prohibition inspector with all the powers and jurisdiction of that office; and was at the time of the seizure of this car empowered as State prohibition inspector to make such a seizure as that here in issue anywhere within the State.

There was no error in the ruling of the court that the seizure of the car by Otten was a valid seizure.

█ The fifth assignment of error is that the court erred in not holding that under the provisions of subsection (i) of section 28 of the prohibition law of Virginia (Acts 1924, chapter 407), as amended by chapter 374, Acts 1928 (1928 Supp. Va. Code, section 4675 [28], subsection [i]), the appellant was entitled to have this car delivered to it as a *bona fide* lienor upon the payment of costs.

As held in *C. I. T. Corporation* v. *Commonwealth*, 153 Va. 57, 149 S. E. 523, this section applies as well to liens duly perfected in West Virginia as to liens duly perfected in Virginia. But under this section, in order that the lienor may be entitled to the car, he must have "perfected his title to the conveyance, if it be a motor vehicle, prior to its seizure, or within ten days from the time same was acquired." What is meant by "perfected his title" as used in said section is that he shall have taken all steps required

by law to make his lien effectual against creditors and purchasers for value without notice.

The burden rested upon the appellant here to show not only that it had a lien on this car, but that it had before the seizure of it taken such steps in West Virginia as were required by the laws of that State to make effectual said lien against the creditors of J. R. Thacker and against purchasers from Thacker for value and without notice. This burden the appellant has not borne; and the court correctly held that it was not entitled to have the car delivered to it upon the payment of costs.

*Affirmed.*