COURT OF APPEALS OF VIRGINIA


Present: Judges Willis, Agee and Senior Judge Overton
Argued at Alexandria, Virginia


RUSSELL EDWARD PEVERELL

                                    MEMORANDUM OPINION* BY
v.    Record No. 0060-01-4          JUDGE G. STEVEN AGEE
                                          APRIL 23, 2002

KAREN FAYE (CONDER) ESKEW


         FROM THE CIRCUIT COURT OF THE CITY OF ALEXANDRIA
                    Alfred D. Swersky, Judge

         Timothy B. Beason (Law Offices of Gwendolyn
         Jo M. Carlberg; Shoun & Bach, on briefs),
         for appellant.

         (Paul A. Scott; Madigan & Scott, Inc., on
         brief), for appellee.  Appellee submitting
         on brief.


     Russell E. Peverell (father) appeals orders of the

Alexandria Circuit Court denying his motions for the appointment

of a guardian ad litem for his minor daughter, a restraining

order, the modification of child support, an award of attorney's

fees and a decree requiring the parties to submit to

pre-docketing review and approval of their future motions.  For

the following reasons we affirm in part and reverse in part.

                       I.  BACKGROUND

     As the parties are fully conversant with the record in this

case and because this memorandum opinion carries no precedential

_____

     * Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

value, only those facts necessary to a disposition of this appeal are recited.

Father and Karen C. Eskew (mother) were divorced in 1990 and have been engaged in some form of litigation ever since. Mother was granted physical custody of the parties' two minor children (Kate and Ryan). The children have lived for several years with mother and her second husband (Mr. Eskew) and their two children in California. A complaint was filed with the California Department of Child and Family Services in June 2000, alleging Mr. Eskew had sexually abused Kate. Upon learning of the complaint in September 2000, father filed a motion with the Alexandria Circuit Court on October 4, 2000, requesting, inter alia, an order awarding father sole legal and physical custody of Ryan, a restraining order to require mother to forbid Mr. Eskew from being in the presence of the parties' children,[1] and the appointment of a guardian ad litem for Kate.

On October 24, 2000, by an agreed order, father was awarded physical custody of Ryan. Also on that day, the trial court heard evidence with regard to the motion for a guardian ad litem for Kate and whether a restraining order regarding Mr. Eskew should be issued. The trial court orally granted the motion to appoint a guardian ad litem for Kate and requested investigative

---

[1] We refer to the requested order as a restraining order herein even though it would be directed to mother to cause the restraint of Mr. Eskew and not to Mr. Eskew directly.

information regarding the circumstances surrounding the need for a restraining order. On December 13, 2000, the trial court entered an order denying, without prejudice, the request to appoint a guardian ad litem for Kate and denied the motion for a restraining order against mother as to Mr. Eskew.[2]

Father also filed a motion to modify child support in light of the change in Ryan's custody. The issue of child support and the remaining issues from the October 4, 2000 motion were considered by the trial court on December 18, 2000.

On that day, the trial court heard testimony regarding mother's income. Mother testified that she and Mr. Eskew (from whom she was then separated) maintain a joint checking account in which both their payroll checks are deposited. Mother testified that Mr. Eskew had agreed to pay her "guideline" spousal support; however, she testified that she had not received any since the separation began. The record does not contain either a written agreement executed by mother and Mr. Eskew regarding spousal support or a court order directing payment of spousal support.

---

[2] On November 28, 2000, the trial court, in a letter opinion, denied the request for a restraining order, stating "the courts in California are best equipped to deal with the particular aspects of this case arising out of the alleged conduct of [mother's estranged husband]." A copy of a November 2, 2000 order of the Los Angeles County, California Superior Court was submitted to the trial court which restrains Mr. Eskew from coming within 100 yards of mother, her residence or the children's school.

Mother further testified that Mr. Eskew was paying most of her household and living expenses, but these payments were not in lieu of spousal support.  Mother also testified that while she had previously been employed full-time, she was currently employed only part-time due to stress and the need to be home with the children.  After hearing the parties' testimony and reviewing the evidence, the trial court stated from the bench regarding mother's employment:

> I find specifically that [mother] is not
> voluntarily underemployed and that there is
> no reason to attribute or impute any other
> income . . . .
>
> *    *    *    *    *    *    *
>
> [S]he's not voluntarily under-employing for
> purposes of reducing any child support
> obligation she may have had.

In addition, the court, sua sponte, announced:

> I think there needs to be in this case a
> moratorium on Court hearings.  What I'm
> going to then order is that there will be no
> further matter put on this Court's docket
> without the express consent of the Court
> based on a written pleading filed by
> whichever party seeks to put it back on,
> absent some true emergency . . . .

Accordingly, the trial court entered a decree on December 18, 2000, requiring father to pay mother $268 per month for Kate's support.  No attorney's fees were awarded to either party.  The decree also provided:

> No further matters shall be put on this
> court's docket without the expressed consent
> of this court based upon a written pleading

filed by whichever party seeks to put the matter on the docket, absent some true emergency.

## II.  ANALYSIS

### A.  THE RESTRAINING ORDER

Father contends the trial court erred in failing to grant an order requiring mother to restrict Mr. Eskew's access to Kate and Ryan.  We disagree.

Father's assignment of error regarding his son is moot as father now has physical custody of Ryan.  As to Kate, we note that a trial court has discretion in determining whether to issue a restraining order.  In this case, it was not error to deny the motion when there was evidence the California courts were overseeing the matter and that mother was limiting her estranged husband's contact with the daughter.  Moreover, the trial court had no jurisdiction over Mr. Eskew and no power, through mother or otherwise, to compel any particular action by a California court.  Credible evidence supports the trial court's decision, and we will not reverse it.

### B.  GUARDIAN AD LITEM APPOINTMENT

On appeal, father also contends the trial court erred in failing to appoint a guardian ad litem for Kate.  Again, we disagree.

Father's motion did not request custody of Kate, but only that a guardian ad litem "determin[e] what would be in Kate's best interest with regard to custody."  While the trial court

- 5 -

indicated from the bench at one point that a guardian ad litem would be appointed, no order was entered to do so. Subsequently, no motion for change of custody having been filed, the trial court determined that the appointment of a guardian ad litem was not then warranted. We do not find the trial court's decision to be erroneous.

The established rule is that a guardian ad litem may be appointed after a trial judge, who is considering any legal proceeding in which the rights of a minor are involved, makes a preliminary finding that the best interests of the child require such appointment. See Verrocchio v. Verrocchio, 16 Va. App. 314, 317, 429 S.E.2d 482, 484 (1993). No finding was ever made by the trial court that Kate's best interest required the appointment of a guardian. Further, as there were no present issues before the trial court in which the rights of the daughter were involved, the trial court did not abuse its discretion in failing to appoint a guardian ad litem for Kate.

### C. CHILD SUPPORT

### 1. MOTHER'S GROSS INCOME

Father also contends the trial court erred in applying the statutory provisions of Code §§ 20-108, 20-108.1 and 20-108.2, which resulted in the trial court failing to include all of mother's gross income in its child support determination. Upon review, we remand this matter for further findings by the trial

court as the record is inadequate to permit appellate review on this issue.

"Decisions concerning . . . [child] support rest within the sound discretion of the [circuit] court . . . . " Calvert v. Calvert, 18 Va. App. 781, 784, 447 S.E.2d 875, 876 (1994). "The trial court's decision, when based upon credibility determinations made during an ore tenus hearing, is owed great weight and will not be disturbed unless plainly wrong or without evidence to support it." Douglas v. Hammett, 28 Va. App. 517, 525, 507 S.E.2d 98, 102 (1998).

After finding a change in material circumstances, as the trial court did in this case, the starting point for determining the child support obligation of a party at a modification hearing, is to compute the presumptive amount using the guidelines and schedule found in the Code. See Watkinson v. Henley, 13 Va. App. 151, 158, 409 S.E.2d 470, 473 (1991). Code § 20-108.2, the statutory guideline for determining the presumptive amount of child support, is based on each party's gross income. "Gross income" is defined, in pertinent part, as: "[A]ll income from all sources, and shall include . . . spousal support . . . . " Code § 20-108.2(C).

Neither a written agreement by the parties nor a court order, requiring the payment of spousal support to mother from Mr. Eskew, is in the record. However, father argues the expense payments made by Mr. Eskew to mother were nonetheless de facto

- 7 -

spousal support and should be part of mother's gross income as "income from all sources." While mother denied, without contradiction, that the expense payments were in lieu of spousal support, she affirmed the amount and types of such payments.

Upon review of the record, we conclude, by inference, that the trial court decided not to include the payments on behalf of mother by Mr. Eskew in her gross income as "income from all sources," but there is no factual finding by the trial court as to why these payments were excluded. There must be a proper foundation in the record to support the granting of an award and the amount of the award. See, generally, Stumbo v. Stumbo, 20 Va. App. 685, 693, 460 S.E.2d 591, 595 (1995). We are thus unable to determine from the record whether the trial court erred in its calculation of child support.

As we cannot accomplish an appellate review of the trial court's decision without its factual determination as to whether and why Mr. Eskew's payments to mother should be included or excluded as part of her gross income for purposes of determining child support, we must remand this issue for findings of fact by the trial court.

## 2. IMPUTATION OF INCOME

Father also challenges the trial court's refusal to impute income to mother whom father alleged was voluntarily underemployed. We find no error in the trial court's decision.

- 8 -

The party seeking to impute income has the burden of proof. Brody v. Brody, 16 Va. App. 647, 651, 432 S.E.2d 20, 22 (1993). The decision to impute income is within the sound discretion of the trial court, and its refusal to impute income will not be reversed unless plainly wrong or unsupported by the evidence. Saleem v. Saleem, 26 Va. App. 384, 393, 494 S.E.2d 883, 887 (1998).

On appeal, the evidence is viewed in the light most favorable to mother, the prevailing party below. See Cook v. Cook, 18 Va. App. 726, 731, 446 S.E.2d 894, 896 (1994). In this case, credible reasons support the trial court's decision that imputation of income was not appropriate, and reflect no abuse of discretion by the trial court.

It is uncontested that mother was employed previously in a full-time position and chose to resign that position without being discharged. Father met his burden of showing mother was underemployed. Mother was then burdened with producing evidence to explain why her underemployment was not "voluntary." Antonelli v. Antonelli, 242 Va. 152, 154, 409 S.E.2d 117, 119 (1991).

Viewing the evidence in the light most favorable to mother, we find credible evidence to support the finding that mother met her burden. Mother provided the trial court with cogent reasons for being employed part-time at the time the support determination was made. Her reasons included overseeing Ryan's

- 9 -

recovery from an automobile accident at the start of the new school year, which was followed by making time and arrangements for Kate's counseling, dealing with the multiple investigations by child protective services each time father filed a complaint, and recovering from her own medical problems. The trial court found that mother's given reasons provided sufficient justification to be employed only part-time. Therefore, we find no error in the trial court's decision that the evidence did not warrant an imputation of income to mother. See, generally, Hiner v. Hadeed, 15 Va. App. 575, 425 S.E.2d 811 (1993).

## D. ATTORNEYS' FEES

Father also argues that the trial court erred by denying him attorney's fees. We disagree again.

"An award of attorney fees is discretionary with the court after considering the circumstances and equities of the entire case and is reviewable only for an abuse of discretion." Gamer v. Gamer, 16 Va. App. 335, 346, 429 S.E.2d 618, 626 (1993). "The key to a proper award of counsel fees is reasonableness under all of the circumstances revealed by the record." Ellington v. Ellington, 8 Va. App. 48, 58, 378 S.E.2d 626, 631 (1989). Based on the number of issues involved and the respective abilities of the parties to pay, we cannot say that the trial court abused its discretion in ordering the parties to bear their own attorney's fees. The decision to deny father attorney's fees is affirmed.

E.  PRE-DOCKETING REVIEW

Lastly, father contends on appeal that the trial court violated his due process rights when it ordered that no future matters between the parties be placed on the court's docket for hearing unless first approved by the court.  While the decree does not bar the filing of pleadings, a new matter, excluding those arising in "some true emergency," "won't be put on this court's docket without express[] consent [of the trial court]."  Father contends the trial court's implementation of this pre-docketing review violates his due process rights.  We agree with father.

We are cognizant of the trial court's power and authority to control its docket and will not reverse on appeal a trial court's decision related to the control of its docket unless there is a showing of an abuse of discretion and prejudice.  See, generally, Mills v. Mills, 232 Va. 94, 348 S.E.2d 250 (1986).  Generally, "[t]he determination whether a trial court has abused its discretion is fact-specific."  Walsh v. Bennett, 260 Va. 171, 175, 530 S.E.2d 904, 907 (2000).  However, in assessing the propriety of the imposition of a particular decision, we may also take into account the context in which the decision was made and any policy considerations that might be pertinent to the imposition of that decision.  See, e.g., id. at 176, 530 S.E.2d at 907 (holding that, in addition to constituting an abuse of discretion on the facts of the case,

- 11 -

the pretrial sanction imposed by the trial court was also inappropriate because it deprived the plaintiff of a "day in court").  Under the facts of this case, the parties were denied due process by the trial court when it imposed the pre-docketing review requirement.

No "State shall deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. amend. XIV, § 1.  "[N]o person shall be deprived of his life, liberty, or property without due process of law."  Va. Const. art. I, § 11.

> "The fourteenth amendment, in declaring that no State 'shall deprive any person of life, liberty or property without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws,' undoubtedly intended, not only that there should be no arbitrary deprivation of life or liberty or arbitrary spoliation of property, but that equal protection and security should be given to all under like circumstances in the enjoyment of their personal and civil rights; that all persons should be equally entitled to pursue their happiness and acquire and enjoy property; that they should have like access to the courts of the country for the protection of their persons and property, the prevention and redress of wrongs, and the enforcement of contracts; and that no impediment should be interposed to the pursuits of anyone except as applied to the same pursuits by others under like circumstances . . . ."

C. I. T. Corp. v. Commonwealth, 153 Va. 57, 63-66, 149 S.E. 523, 525 (1929) (quoting Barbier v. Connolly, 113 U.S. 27, 31 (1884))

- 12 -

(emphasis added). "Due process requires that, before a court may deprive a party of a property or liberty interest, the party must receive notice and the opportunity to be heard." Parish v. Spaulding, 26 Va. App. 566, 576, 496 S.E.2d 91, 96 (1998) (citing Williams v. Virginia Elec. & Power Co., 18 Va. App. 569, 576-77 and n.5, 445 S.E.2d 693, 698 and n.5 (1994)).

That portion of the December 18, 2000 order requiring pre-docketing review was raised and implemented by the trial court sua sponte. Neither party requested this action, and no prior notice was given to the parties that the trial court intended to so act. The trial court heard no argument prior to issuing its ruling. There is nothing in the record before us evidencing that either party has abused its right to access the trial court's docket and warranting the pre-docketing review. For example, there is no showing of abuse of process or the filing of frivolous pleadings.[3] Because the record lacks evidence of the due process procedural requirements, the trial

---

[3] For examples of where there has been an imposition of restrictions on the right to access a court, see Shief v. Kakita, 517 U.S. 343 (1996) (after multiple frivolous filings by the appellant, the Court directed "the Clerk not to accept any further petitions for certiorari from [appellant] in noncriminal matters unless he pays the docketing fee required by [Supreme Court] Rule 38 and submits his petition in compliance with [Supreme Court] Rule 33.1"); Jones v. ABC-TV, 516 U.S. 363 (1996) (same); Attwood v. Singletary, 516 U.S. 297 (1996) (same); Brock v. Angelone, 105 F.3d 952, 954-55 (4th Cir. 1997) (after multiple frivolous filings by the appellant, appellant enjoined from filing any further civil appeals until monetary sanctions are paid, and unless a district court judge certifies that his claim is not frivolous).

- 13 -

court's sua sponte order, which places barriers upon the parties' full access to the court is, therefore, contrary to basic due process and requires reversal.  In so holding, we make no judgment as to whether pre-docketing review may be justified on the merits of this case, provided the parties are first accorded the basic rights of notice and the opportunity to be heard.

Accordingly, we reverse and remand for further findings of fact as to the issue of whether Mr. Eskew's payments to mother are to be included or excluded from her gross income when calculating guideline child support; and we reverse and vacate that portion of the December 18, 2000 order which bars the parties from access to the court's docket without prior court approval.  All other decisions by the trial court are hereby affirmed.

Affirmed, in part;
reversed and remanded, in part;
reversed and vacated in part.