Jos. SCHLITZ BREWING COMPANY, Respondent, vs. CITY OF MILWAUKEE, Appellant.
PABST BREWING COMPANY, Respondent, vs. SAME, Appellant.

*June 6—June 21, 1939.*

For the appellant there were briefs by *Walter J. Mattison,* city attorney, and *Ronold A. Drechsler,* assistant city attorney, and oral argument by *Mr. Drechsler.*

For the respondents there was a brief by *Corrigan & Backus* and oral argument by *Francis H. Parson* and *Walter D. Corrigan, Sr.,* all of Milwaukee.

WICKHEM, J.   The issue upon this appeal is whether malt or barley owned by a brewery and stored in its own warehouses and elevators until required for the manufacture of beer is subject to the occupation tax provided for by sec. 70.41 (1), Stats., and exempt from a personal property tax.   The facts are substantially without dispute and were for the most part stipulated in the trial court.   Plaintiffs have for years been engaged in the business of manufacturing and

selling beer and malt-food products. Each company owns and operates upon its premises in the city of Milwaukee elevators and warehouses in which barley and malt are stored until required in the manufacture of their products. On May 1, 1938, the Schlitz Company had in its elevators and warehouses 412,000 bushels of barley and 939,925 bushels of malt. On the same date the Pabst Company had in its elevators and warehouses 572,650 bushels of barley and 543,516 bushels of malt. The grain was assessed as personal property and personal property taxes were levied against each company and paid under protest by each to the city treasurer of the city of Milwaukee. Each plaintiff duly and timely filed a protest under sec. 70.47 (7), Stats., objecting to the taxation of the barley and malted barley or malt under the personal property tax, and contending that each was subject only to the occupation tax prescribed by sec. 70.41 (1), Stats. Thereafter, each plaintiff duly filed a claim with the city clerk of the city of Milwaukee for a refund of the personal property tax paid upon this grain. In each instance the claims of plaintiffs were disallowed by the common council. It is conceded that the elevators in question were private elevators and that the grain was the property of plaintiffs. There is no dispute as to the number of bushels involved or the amount of the tax. The only issue of fact is whether, as contended by plaintiffs, malt is a grain, or whether, as contended by the city, it is a product of barley that has essentially lost its character as grain, and is therefore not within the provisions of sec. 70.41 (1), Stats.

Sec. 70.41 (1), Stats., reads as follows:

"Every person, copartnership, association, company or corporation operating a grain elevator or warehouse in this state, except elevators and warehouses on farms for the storage of grain raised by the owner thereof, shall on or before December fifteenth of each year pay an annual occupation tax of a sum equal to one-half mill per bushel upon all wheat and flax and one-fourth mill per bushel upon all other grain received

in or handled by such elevator or warehouse during the preceding year ending April thirtieth; and such grain shall be exempt from all taxation, either state or municipal."

The principal contentions of the city of Milwaukee with respect to this section are, first, that it provides an occupational tax, and that therefore it is presumably applicable only to persons, partnerships, or corporations whose business is that of operating elevators, and does not apply to the elevator or warehouse of a brewer, miller, or other manufacturer of grain products because operating an elevator is not the business of such a manufacturer; second, that it relates to public rather than private elevators, and that this construction is supported by the decision in *State ex rel. Bernhard Stern & Sons v. Bodden,* 165 Wis. 75, 83, 160 N. W. 1077, where it is pointed out that the legislature sought by its enactment to prevent the evasions and correct the want of equality in personal property taxation arising out of the fact that "the grain handled in *public* elevators and warehouses is a commodity in transit from place to place in the channels of commerce, and much of it is in such transit from state to state."

We conclude that the contentions are unsound and that the trial court correctly disposed of them. The opening words of the section are clear and unambiguous. Every person, copartnership, etc., operating a grain elevator or warehouse in this state, except elevators and warehouses on farms for the storage of grain raised by the owner thereof, is required to pay an occupation tax. The section does not refer to every person *whose occupation* is that of operating a grain elevator or warehouse or a *public* grain elevator or warehouse. It specifically refers to every person operating a grain elevator or warehouse in this state with the exception stated. This exception is quite significant. It was deemed necessary by the legislature specifically to exempt elevators and warehouses operated by farmers for the storing of grain raised by them in order to avoid imposing an occupation tax upon them. If

the opening clause of the section meant only to deal with persons whose occupation is that of operating grain elevators or warehouses generally or that of operating public elevators or warehouses for the storage of grain there would be no purpose in excepting farmers because they would be without the definition and scope of the act. The enactment of the exception implies, (1) that otherwise a farmer whose occupation is not that of operating a private or public grain warehouse or elevator would be within the section, and (2) that this is the only exception intended.

Furthermore, light is cast upon the legislative purpose by the provisions of sec. 70.42 (1), Stats. This section, which immediately follows the one under examination, provides for an occupation tax on coal. Its opening sentence is as follows: "Every person, copartnership, association, company or corporation, operating a coal dock in this state, other than a dock used solely in connection with an industry and handling no coal except that consumed by such industry" shall pay an occupation tax. It will be noted that the opening words of the two sections are identical except that one refers to grain elevators and the other to coal docks. It was, however, considered necessary in sec. 70.42 (1), Stats., specifically to exempt docks used solely in connection with an industry and handling no coal except that consumed by such industry. The insertion of this exception throws light upon the contention that sec. 70.41 (1), Stats., should be given the restricted meaning contended for by the city. The fact that an exception was considered necessary indicates that otherwise a coal dock used solely in connection with an industry would be regarded as covered by what preceded the statement of the exception and the fact that the exception was inserted indicates that when it desired to restrain the broad opening language of the section the legislature found it a relatively simple matter to express this purpose. The fact that such an exception is in sec. 70.42 (1), Stats., and

not in sec. 70.41 (1), Stats., is quite probative of an intent not to restrain or limit the language of the latter section. We conclude that sec. 70.41 (1), Stats., imposes an occupation tax upon all warehouses used for the storage of grain except those operated by farmers for the storing of products raised by them. The mere fact that this is denominated an occupation tax is not a circumstance of sufficient importance to outweigh these considerations.

Nor is the statement in *State ex rel. Bernhard Stern & Sons v. Bodden, supra,* to the effect that the legislators had their attention brought by the tax commission to the fact that the system of taxing grain in public elevators and warehouses resulted in evasions and want of equality in taxation entitled to the significance attributed to it by the city. Whether the evils which gave rise to the enactment of this section arose principally out of the operation of public elevators, as contended for by the city, or whether, as contended by plaintiffs, its enactment was promoted by the millers of the state to prevent discriminations and evasions that made it difficult for them to compete with outside manufacturers of flour, we deem immaterial in this case. The same evils and inequalities as exist in the case of public elevators exist to a substantial extent in the case of private elevators. Some owners of elevators storing their own grain are able to dispose of it and empty their elevators by May 1st. Others are not so fortunate. If all succeed in disposing of their grain there is no appreciable personal property tax. If some do and some do not, then some are taxed excessively and some wholly or partly avoid the tax. This was the principal purpose of the enactment of the occupation tax on coal, and the two sections are so nearly the same in purpose and effect that we cannot believe that sec. 70.41 (1), Stats., is any different in meaning and scope except in so far as their respective exceptions make them so. We conclude that the *Stern Case* does not support the contentions of the city. In that case a personal property

assessment was made against the Stern Company in the sum of $324,300 which included an item of $250,000 as manufacturers' stock consisting entirely of grain in the possession of the purchaser on May 1st of the taxing year. The elevators and warehouses were private in character and coincidentally were later purchased by one of the plaintiffs and are involved in this case. The grain was owned by the Stern Company and held for manufacturing purposes. The court construed the same section that is involved here and held it applicable. The decision is direct and imperative authority in support of plaintiffs' contentions.

It is next contended by the city that upon this construction of sec. 70.41 (1), Stats., the act is unconstitutional because personal property owned by one taxpayer and in elevators or warehouses could be taxed thereunder while the same kind of personal property owned by another but not in warehouses or elevators would be subject to personal property tax. The same contention was made and rejected in the *Stern Case*. The city asserts that the constitutionality of the section was sustained in the *Stern Case* upon the assumption that it related to public grain elevators as a class. The answer is that it was dealing with a private elevator and one in which was stored the grain of its owners held for manufacturing purposes. The contention upon this point in the *Stern Case* is thus stated by the court (p. 81):

"It is strenuously insisted that this interpretation of the act makes it invalid because it exempts grain handled in elevators and warehouses from taxation and makes all grain not so handled taxable."

The contention was rejected. Further than this, even if there were discriminations, as contended by the city, the city is not affected by the discrimination and has no standing to raise the constitutional point. *Will of Heinemann,* 201 Wis. 484, 230 N. W. 698; *State v. Arnold,* 217 Wis. 340, 258

N. W. 843. This has been so frequently held that it needs no further exposition here.

We now deal with a contention which, if successful, would require reversal of the judgment as to the taxes upon the malt or malted barley involved. It is contended by the city that malt or malted barley is not grain. Evidence was produced upon this point and the findings of fact are to the effect that it is grain. This finding we deem to be supported by the evidence. The evidence is to the effect that malted barley is barley that has been germinated and the germination stopped at a suitable point of the development of the sprout by the application of heat and drying. The grain is indistinguishable from barley in appearance except to the extent that the sprout changes its appearance. It has somewhat different properties, but it is still capable of the same food uses; it is still capable of being used as seed, and it has not in any way lost its physical identity. The evidence is overwhelmingly to the effect that the barley kernel, although subjected to the malting process, still is to be classified as grain. It was the opinion of the experts that this classification would persist until some major structure of the grain has been removed or the kernel torn asunder so that it no longer exists as a botanical entity. It follows that the judgments of the trial court are correct and should be affirmed.

*By the Court.*—Judgments affirmed.