# Richmond

## William R. Sims v. W. K. Cunningham, Jr., Superintendent, Etc.

March 5, 1962.

Record No. 5385.

Present, All the Justices.

*Lewis T. Booker,* for the plaintiff in error.

*Reno S. Harp, III, Assistant Attorney General (Frederick T. Gray, Attorney General,* on brief), for the defendant in error.

WHITTLE, J., delivered the opinion of the court.

Sims filed a petition for a writ of *habeas corpus* in the Hustings Court of the City of Richmond, Part II, in October, 1960. The case was transferred from that court to the Circuit Court of the City of Richmond, which court, by order dated January 24, 1961, assumed jurisdiction and issued a writ requiring the production of the petitioner before the court. Respondent Cunningham filed a return to the writ and the matter came on for hearing on February 20, 1961.

After hearing testimony *ore tenus* and argument of counsel the court took the matter under advisement and on April 7, 1961, entered an order (accompanied by a written opinion) dismissing the writ and remanding petitioner to respondent's custody.

Sims complains that the trial court erred, to his prejudice, by failing to discharge him from confinement, upon the ground that § 53-296 of the Code of Virginia, 1950, as applied to him, denies him his rights under the Fourteenth Amendment to the Constitution of the United States.

The Code section under which Sims is confined provides:

"§ 53-296. CONVICTS PREVIOUSLY SENTENCED TO LIKE PUNISHMENT; ADDITIONAL CONFINEMENT.— When a person convicted of an offense, and sentenced to confinement therefor in the penitentiary, is received therein, if it shall come to the knowledge of the Director of the Department of Welfare and Institutions that he has been sentenced to a like punishment in the United States prior to the sentence he is then serving, the Director of the Department of Welfare and Institutions shall give information thereof without delay to the Circuit Court of the City of Richmond. Such court shall cause the convict to be brought before it, to be tried upon an information filed, alleging the existence of records of prior convictions and the identity of the prisoner with the person named in each. The prisoner may deny the existence of any such records, or that he is the same person named therein, or both. Either party may, for good cause shown, have a continuance of the case for such reasonable time as may be fixed by the court. The existence of such records, if denied by the prisoner, shall be first determined by the

court, and if it be found by the court that such records exist, and the prisoner says that he is not the same person mentioned in such records, or remains silent, his plea, or the fact of his silence, shall be entered of record, and a jury of bystanders shall be impaneled to inquire whether the convict is the same person mentioned in the several records. If they find that he is not the same person, he shall be remanded to the penitentiary; but if they find that he is the same person, or if he acknowledge in open court after being duly cautioned, that he is the same person, the court may sentence him to further confinement in the penitentiary for a period of not exceeding five years, if he has been once before sentenced in the United States to confinement in the penitentiary; but if he has been twice sentenced in the United States to such confinement, he may be sentenced to be confined in the penitentiary for such additional time as the court trying the case may deem proper. This section, however, shall not apply to successive convictions of petit larceny."

Part of the facts in the case at bar were stipulated by counsel as follows:

"1. Petitioner was convicted of grand larceny on January 31, 1947, by the Hustings Court of the City of Richmond and was sentenced to two years' confinement. He was discharged from confinement on June 9, 1948.

"2. Petitioner was convicted of grand larceny on April 6, 1949, in the Hustings Court of the City of Richmond. He was sentenced to three years' imprisonment. He was discharged from confinement on November 27, 1951.

"3. Petitioner was convicted of grand larceny on October 22, 1957, in the Hustings Court of the City of Richmond. He was sentenced to two years' imprisonment. His term should have expired, allowing for good behavior, on February 22, 1959.

"4. On December 11, 1957, T. Gray Haddon, Commonwealth's Attorney for the City of Richmond, lodged an Information against petitioner in this court alleging that petitioner had been convicted of three offenses against the laws of the Commonwealth of Virginia.

"5. On March 12, 1958, petitioner was sentenced on account of the aforesaid Information to confinement in the Virginia State Penitentiary for an additional period of ten years, one year of which was suspended upon imposition of sentence. Such sentence was imposed pursuant to § 53-296 of the Code of Virginia, 1950.

"6. At all times before such Information is filed in similar cases with this court the prior confinements of the individual in question

called to the court's attenton in the Information have been confinements in the Virginia State Penitentiary.

"7. It is the policy of the Department of Welfare and Institutions not to inform against individuals under the provisions of § 53-296 of the Code of Virginia, 1950, who have previously been sentenced to imprisonment in penitentiaries of other States or of the United States three or more times even though individuals previously confined to the Virginia penitentiary three or more times are invariably informed against under the provisions of § 53-296."

The following statement of facts was also agreed to by counsel:

"Counsel for petitioner and counsel for respondent agree that the following is a correct statement of facts adduced in evidence at the trial of this matter on February 20, 1961:

"* * * (T)estimony of the witness Curtis R. Mann was that he has served as Director of the Bureau of Records and Criminal Identification for twenty-three years; that his duties include receiving each prisoner and keeping and computing the 'time' each serves and that he forwards each prisoner's fingerprints to the Federal Bureau of Investigation of the Department of Justice and receives in return a report showing other convictions 'where the man was fingerprinted.' If the particular prisoner was not fingerprinted and copies of the prints forwarded by the arresting or receiving authority to the FBI, then the record transmitted by that unit would not show such other conviction.

"Mr. Mann prepares a list of 'Virginia convictions' and forwards this list to the office of the Superintendent from which it is sent on to * * * the Commonwealth's Attorney for the City of Richmond. The witness further stated that the FBI record indicates only that the individual had been convicted and received at a particular penal institution, adding that no certified and authenticated copies of the court orders in out-of-state cases are furnished with the FBI report.

"The Commonwealth's Attorney, T. Gray Haddon, testified that he had served in that capacity for twenty-eight years and that he receives the list of recidivists from the Clerk's Office of the Circuit Court of the City of Richmond and files the Informations prepared therefrom in this court. To the best of his recollection the witness had never 'had a prisoner on a foreign' (non-Virginia) conviction. On cross examination he testified that he had 'nol prossed' some Informations where he felt there was insufficient evidence, etc.

"The last witness, the respondent [Cunningham], testified that he had begun his employment with the Department of Welfare and In-

stitutions in 1939 and had been Superintendent of the Penitentiary since August 1, 1960. Mr. Cunningham stated that it was the policy of the Department to furnish information of and to request that Informations be filed only against those prisoners who had previously served time under a conviction and sentence to the Virginia State Penitentiary. He added that he did not know the reason for the policy which was followed, but that it had never been questioned."

Petitioner initially attacked the constitutionality of Code.§ 53-296. He has now abandoned that attack. We have sustained the constitutionality of the statute on several occasions. *King* v. *Lynn* (1893), 90 Va. 345, 18 S. E. 439; *Surratt* v. *Commonwealth* (1948), 187 Va. 940, 48 S. E. 2d 362. The Supreme Court of the United States has also upheld the validity of similar statutes. *Moore* v. *Missouri* (1895), 159 U. S. 673, 16 S. Ct. 179, 40 L. ed. 301; *McDonald* v. *Massachusetts* (1901), 180 U. S. 311, 21 S. Ct. 389, 45 L. ed. 542; *Graham* v. *West Virginia* (1912), 224 U. S. 616, 32 S. Ct. 583, 56 L. ed. 917.

Petitioner now says that the statute *as applied to him* denies him the equal protection of the laws guaranteed by the Fourteenth Amendment to the Constitution of the United States[1]

Prior to 1848 the Virginia recidivist statute applied only to persons with previous confinement in the Virginia penitentiary. In 1848 the statute was changed to include the imposition of additional imprisonment on prisoners with previous confinement anywhere in the United States. Acts of Assembly 1847-1848, page 123, Section 13. (*Cf.* Code of Virginia 1819, §§ 14-16, pp. 619-20 with Code of Virginia, 1849, Chapter 199, §§ 25-27.) Therefore Sims argues that the General Assembly over one hundred years ago decided to stop doing what the Department of Welfare and Institutions is now doing by administrative fiat. He says that the discrimination in favor of prisoners with out-of-state convictions is the deliberate and intentional policy of the Department of Welfare and Institutions. In other words he says that "all around him are fellow prisoners [with out-of-state convictions] in the same category established by the Act who have not had a day added to their terms", and that this is no mere mistake, inadvertence, or coincidence.

[1] "Section 1. All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

The Supreme Court of the United States said in *Snowden* v. *Hughes* (1944), 321 U. S. 1, 8, 64 S. Ct. 397, 401, 88 L. ed. 497, 503:

"The unlawful administration by State officers of a State statute fair on its face, resulting in its unequal application to those who are entitled to be treated alike, is not a denial of equal protection unless there is shown to be present in it an element of intentional or purposeful discrimination."

In *State* v. *Daley* (1960), 147 Conn. 506, 163 A. 2d 112, Daley, a prisoner sentenced under the Connecticut recidivist statute, sought to show that he had been unconstitutionally discriminated against because fellow prisoners similarly situated had not been sentenced to additional time. The court held:

"The fact that persons have not been sentenced as habitual criminals when they might have been warrants no inference that there was any unwillingness on the part of the State's Attorney to enforce the law as written. Many reasons may account for the instances; for example, the prior convictions may not have been susceptible of adequate proof * * *. Even were it shown, however, that the instances were due to the failure of the State's Attorney to enforce the criminal laws, that fact would not constitute a defense for any other offender, in the absence of a showing of intentional or arbitrary action amounting to an unjust and illegal discrimination between persons in similar circumstances."

In advancing his argument Sims makes two assertions: First he says that he has proved that the Director adopted "a deliberate and intentional policy of discrimination." Secondly he argues that the Director had "knowledge" of the prior out-of-state convictions of inmates confined in the penitentiary.

An examination of the testimony and the stipulations reveals that it is the policy of the Director to invoke the provisions of the statute only against Virginia offenders. There is no evidence which reveals the reason for this policy. To sustain his position on his first assertion the burden was on petitioner to show a clear, intentional or purposeful discrimination. A discriminatory purpose is not to be presumed. *Snowden* v. *Hughes, supra.*

Petitioner relies heavily upon the case of *Yick Wo* v. *Hopkins*, 118 U. S. 356, 6 S. Ct. 1064, 30 L. ed. 220. This case, for several reasons, is not in point. The *Yick Wo* case was discussed in the California case of *People* v. *Montgomery*, 47 Cal. App. 2d 1, 117 P. 2d 437, which case is somewhat similar to the instant case. There the differences between the two cases were pointed out. It was contended

in the *California* case that where officials discriminate and prosecute one but not the other for the same act "there is a denial of protection of the laws under the Fourteenth Amendment, and the prosecution is therefore void." The opinion in the *California* case says in part:

"It should be borne in mind that in the Yick Wo case the equal protection of the law was extended to persons of a particular race to enable them to engage in a lawful business on a basis of equality with all other persons. Appellant now in effect argues from this that equal protection should also be extended to any person to enable him to commit a crime on a basis of equality with all other persons. While all persons accused of crime are to be treated on a basis of equality before the law, it does not follow that they are to be protected in the commission of crime. It would be unconscionable, for instance, to excuse a defendant guilty of murder because others have murdered with impunity. The remedy for unequal enforcement of the law in such instances does not lie in the exoneration of the guilty at the expense of society. * * * Protection of the law will be extended to all persons equally in the pursuit of their lawful occupations, but no person has the right to demand protection of the law in the commission of a crime. In civil matters the distinction is illustrated by the rule that the law will not enforce an illegal contract. If the law will not enforce an illegal contract, neither will it protect a criminal in the commission of his crime. * * *"

The purpose of § 53-296 and its predecessor recidivist statutes is clear. They were enacted for the purpose of inhibiting repetition of criminal acts by individuals against the peace and dignity of the Commonwealth. In other words, the law was designed to protect society against habitual criminals. *Wesley* v. *Commonwealth*, 190 Va. 268, 276, 56 S. E. 2d 362, 365. It is a stiffened penalty for the latest crime, which is considered to be an aggravated offense because a repetitive one. *Gryger* v. *Burke*, 334 U. S. 728, 732, 68 S. Ct. 1256, 1258, 92 L. ed. 1683.

We agree with the trial court that the evidence does not reveal why the present policy has been adopted by the Virginia authorities, hence the petitioner has failed to prove that such policy is a deliberate, intentional or purposeful discrimination among the inmates in the same classification established by the Code section involved.

It very well may be mere laxity in the administration of the law by the Department, but mere laxity, no matter how long continued, is not and cannot be held to be a denial of the equal protection of the

law. *State* v. *Hicks,* 213 Ore. 619, 325 P. 2d 794, 802; *Snowden* v. *Hughes, supra.*

Regarding petitioner's second assertion, that the Director had "knowledge" of the prior out-of-state convictions of inmates in the Virginia penitentiary, a possible and logical answer may be in the difference of opinion between the petitioner and the Director as to the interpretation of the word "knowledge" as used in the statute which provides "if it shall come to the *knowledge* of the Director of the Department of Welfare and Institutions that he [the convict] has been sentenced to like punishment in the United States prior to the sentence he is then serving [in Virginia]," the Director shall give information thereof to the court without delay. The statute then outlines the procedure to be followed which is to the effect that at the trial of the recidivist upon the information filed, the existence of the records of conviction and sentence and the identity of the convict therewith shall be determined. The proceeding necessarily requires the records of previous convictions and sentences to be produced before the court, as well as proof of the identity of the alleged recidivist with the person named in such records.

As a practical matter a prisoner is received in the Virginia penitentiary upon a commitment in the form of a certified copy of the judgment of a Virginia trial court. These records are kept on file. No such authenticated records are available in cases of prisoners previously convicted in other States or in the Federal courts. The statute does not make it incumbent upon the Director to take steps to procure the records of the out-of-state courts.

Evidently at some time when the recidivist statute was amended to place its administration in the hands of the Department of Welfare and Institutions or its predecessor administrative agencies, the word "knowledge" had been construed to mean more than mere information in the sense of hearsay reports, rumors and the like, which are not susceptible of use as evidence. Either this or long-continued laxity in enforcement would seem to be the only explanation of the admitted policy of the Department. There is no evidence to the contrary and, as pointed out, mere laxity in enforcement is not sufficient to make the present manner of application of the statute unconstitutional as a denial of equal protection of the laws.

We hold that Code, § 53-296 is constitutional, and that it is not administered in such a manner as to deprive petitioner of equal protection of the laws guaranteed to him either by the Constitution of the United States or the Constitution of Virginia. See *Oyler* v.

*Boles* (Decided February 19, 1962) 368 U. S. 448, 82 S. Ct. 501, 7 L. ed. 2d 446.

The order of the trial court is

*Affirmed.*

BUCHANAN, J., concurring,

EGGLESTON, C. J., joins in the concurring opinion.

BUCHANAN, J., concurring:

I agree with the conclusion of the foregoing opinion that § 53-296 is constitutional and that it is not administered in such a manner as to deprive the appellant of equal protection of the laws. I think this is so because of the following additional reason:

The practice complained of by the appellant does not discriminate against him. He is treated exactly like all other prisoners in the penitentiary who have been previously convicted of a felony in Virginia. The fact that the statute has not also been enforced against those who have been previously convicted in other States does not deny to him the equal protection of the law, any more than one who is convicted of murder is denied equal protection because others also guilty have not been punished.

The principle stated in *Grosso* v. *Commonwealth*, 177 Va. 830, 839, 13 S. E. 2d 285, 288, with respect to a statute applies as well to the application of the statute:

"It is well settled that one challenging the constitutionality of a provision in a statute has the burden of showing that he himself has been injured thereby. It avails him nothing to point out that some other person might conceivably be discriminated against."

A statute which, " 'in carrying out a public purpose, is limited in its application, if within the sphere of its operation it affects alike all persons similarly situated' " does not violate the Fourteenth Amendment by denying equal protection of the laws. *C. I. T. Corp.* v. *Commonwealth*, 153 Va. 57, 66, 149 S. E. 523, 526. *Barbier* v. *Connolly*, 113 U. S. 27, 5 S. Ct. 357, 28 L. ed. 923; *Via* v. *State Commission on Conservation, Etc.*, 9 F. Supp. 556, 563, affirmed in 296 U. S. 549, 56 S. Ct. 245, 80 L. ed. 388, on the ground that appellant had adequate remedy at law.

If § 53-296 provided that a person sentenced to the penitentiary in

Virginia who had previously been sentenced to like punishment in Virginia should receive additional punishment, its constitutionality would be unassailable. For the same reason a practice which results only in limiting the sphere of the operation of the statute, but which is applied alike to all persons similarly situated, does not deny equal protection, whatever else may be said of the delinquencies with respect to its enforcement.

"Where the class which includes the party complaining is in no manner prejudiced, the general rule is that it is immaterial whether a law discriminates against other classes or denies to other persons equal protection of the laws." 11 Am. Jur., Constitutional Law, § 113, p. 757, and cases cited in Note 19.

One not affected by a discrimination made by a statute has no standing to question its validity as discriminatory. *Schlitz Brewing Co.* v. *Milwaukee*, 232 Wis. 118, 286 N. W. 602, 122 A.L.R. 1431.

Equally one not affected by a discrimination in the enforcement of a statute has no cause to complain.

It does appellant no harm if there are those in the penitentiary who have previously been convicted in a State other than Virginia and have not been proceeded against under § 53-296. It would help him not at all if they were given additional punishment, and it takes nothing from him if they are not. The appellant has not been treated differently from any other inmate of the penitentiary. If there are others who might be, but have not been, given additional punishment because they have been previously convicted in other States, that fact in no way prejudices the appellant. The statute is applied equally to him and all others in his situation, and there is no discrimination against him if there be others in a different situation who are allowed to escape the provisions of the statute.

Chief Justice Eggleston joins in this concurring opinion.