William EVANS, Appellant,

v.

W. K. CUNNINGHAM, Jr., Superintendent of the Virginia State Penitentiary, Charles P. Chew, James W. Phillips, and Pleasant Shields, members of the Virginia Parole Board, Appellees.

No. 9152.

United States Court of Appeals Fourth Circuit.

Argued Jan. 17, 1964.

Decided Aug. 6, 1964.

---

Ronald P. Sokol, Charlottesville, Va. (Court-assigned counsel) for appellant.

Reno S. Harp, III, Asst. Atty. Gen., of Virginia (Robert Y. Button, Atty. Gen., of Virginia, on the brief), for appellee.

Before HAYNSWORTH and BELL, Circuit Judges, and BARKSDALE, District Judge.

HAYNSWORTH, Circuit Judge.

The constitutionality of Virginia's recidivist statute, as applied, is attacked upon the ground that it does not reach inmates of Virginia's penitentiary who had been previously convicted of felonies in courts other than those of Virginia. The District Court dismissed the petition upon the ground that state remedies had not been exhausted. We affirm, but we do so upon the merits and not upon the procedural ground.

William Evans is an inmate of the Virginia State Penitentiary, serving an additional sentence imposed upon him under Virginia's recidivist statute. His only complaint is that other prisoners in the same institution, who have been previously convicted of felonies in other states, have not been given additional punishment under Virginia's recidivist statute. This, he says, is a denial to him of equal protection of the law.

I

Evans has not undertaken to present his legal contention to the state courts. The reason he advances for not having done so is a recent decision of the Virginia Supreme Court of Appeals, Sims v. Cunningham, 203 Va. 347, 124 S.E.2d 221, in which that Court upheld the constitutionality of Virginia's recidivist statute as applied.

William R. Sims, as Evans, a Virginia recidivist, tendered in the federal courts the same substantive claim which Evans now advances. We approved dismissal of his petition on the ground that the state remedies had not been exhausted.[1] Sims then applied to the state court, with the result that the Virginia Supreme Court of Appeals fully considered his petition on the merits and decided that there was no denial of equal protection of the law, even though the statute was not used to impose additional sentences upon prisoners confined in the Virginia State Penitentiary who had been previously convicted of felonies in other states. We have not since heard from Sims, but his

1. Sims v. Smyth, 4 Cir., 282 F.2d 814.

fellow prisoner, Evans, presents, apparently, the same question that Sims might have brought back to us.

Over a period of many years there developed a judicially fashioned doctrine that a federal court could not entertain a writ of habeas corpus filed by a state prisoner unless the state prisoner had previously exhausted available state remedies.[2] The judicially fashioned rule was codified in 1948 as 28 U.S.C.A. § 2254. That Section provides:

"An application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State, or that there is either an absence of available State corrective process or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner.

"An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented."

█ The prohibition of § 2254 is mandatory, but the section, itself, contains two exceptions to the rule. The prohibitive rule does not apply if the state provides no remedy or if there are circumstances which make resort to the state remedy ineffective and futile. The latter exception seems applicable here.

It is true that this petitioner, Evans, is not the same petitioner whose identical contention the Supreme Court of Appeals of Virginia considered and decided in Sims v. Cunningham. The Sims case stands, however, as the authoritative and considered judgment of the Supreme Court of Appeals of Virginia. It was

decided only two years ago as of this writing and was even younger than that when Evans filed his petition in the District Court. Since 1962 there has been no substantial change in the composition of Virginia's Supreme Court of Appeals, and there is no suggestion of any possible reason to suppose that that Court might reconsider its considered judgment in the recent Sims case. Under these circumstances, any competent lawyer would advise Evans that he was wasting his time if he undertook to persuade the Virginia Supreme Court of Appeals to reverse itself, unless he was armed with some fresh argument which Sims had not presented. Evans has none. His outstandingly able, court-appointed counsel can only reiterate the same contentions on the substantive issue which Sims presented to the Virginia Court, though his reiteration is thorough and complete.

We have held, of course, that, when the substantive contention of a state prisoner has been presented to and adjudicated finally in the state courts, the exhaustion of remedies doctrine does not require him to apply again to the state courts for another adjudication of his contention, even though the state's post conviction remedies be procedurally still available to him.[3] It has also been held by a District Court that when one of two codefendant-accomplices in the commission of an alleged crime has fully presented their substantive contentions to the state courts, the other need not travel that road before applying to a federal court for a writ of habeas corpus.[4]

Here, Evans and Sims are not the same individual. They were not codefendants, nor were they charged with complicity in the same crime. With respect to their substantive contention here, however, they stand as if identical. The substantive question, which is uncomplicated by any factual controversy, is the same

2. See Ex parte Hawk, 321 U.S. 114, 64 S.Ct. 448, 88 L.Ed. 572.

3. Thomas v. Cunningham, 4 Cir., 335 F. 2d 67; Thomas v. Cunningham, 4 Cir.,

313 F.2d 934; Grundler v. North Carolina, 4 Cir., 283 F.2d 798.

4. Garton v. Tinsley, D.Colo., 171 F.Supp. 387.

whether presented to us by Sims or by Evans.[5] It appears unnecessary under the exhaustion of remedies doctrine that we decline to reach the merits of the issue as tendered by Evans, when we would be compelled to reach the merits if the same issue were tendered by Sims. This is in keeping with the teaching of Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837.

Since any application by Evans to the state courts could amount to no more than a petition to the Supreme Court of Appeals of Virginia to rehear the Sims case, and since there is nothing new to present to that court and no reason to suppose that the Virginia Court would be disposed to reconsider its very recent decision in that case, resort to the procedurally available state remedy appears to be futile and ineffective within the meaning of the second exception embodied in § 2254.

## II

■■ Ordinarily we would not undertake to dispose of a case on the merits if the District Court had failed to reach them upon procedural grounds. If we found the procedural ground insufficient to support dismissal, we would usually remand the case to the District Court to consider and determine the case on the merits. There are obvious advantages in that practice, particularly to the appellate court which thus gains the benefit of a decision on the merits to enlighten its appellate reconsideration. Here, however, there are no factual questions to resolve, and an opinion by a District Judge on the legal issue could hardly be more enlightening to the appellate process than the full opinions of the Supreme Court of Appeals of Virginia on the

merits of the issue. Under the special circumstances of this case, therefore, we think a remand to the District Court to consider the case on the merits would only delay decision without service of any useful purpose.

## III

Virginia's recidivist statute [6] provides that if the Director of the Department of Welfare and Institutions obtains "knowledge" that a person confined in the Virginia penitentiary under a judgment of conviction "has been sentenced to a like punishment in the United States prior to the sentence he is then serving," the Director shall inform the Circuit Court of the City of Richmond of it, following which prescribed procedures are to be followed.

The statute has a long history. Originally, it contemplated the imposition of additional punishment only if the prisoner had previously been convicted of offenses in Virginia.[7] In 1848, it was amended, however, to refer to previous convictions in the United States, as it now does, and the statute now literally requires the Director to report "knowledge" of prior convictions wherever had in the United States.

Admittedly, however, the practice is for the Director to report to the Circuit Court of the City of Richmond only prior convictions in Virginia's state courts. This leads to Evans' contention that, as applied, the law is not evenhanded. It imposes additional punishment upon him, he says, because his prior convictions were in Virginia's courts while imposing no such additional punishment upon his fellow prisoners whose prior convictions

5. The Attorney General of Virginia suggests that there may be a difference between the Sims case and that of Evans, though he does not say what difference there may be, and that the entire record of the state court proceedings initiated by Sims should be examined before it is concluded that there is none. From Sims' previous application to this Court, however, the opinions of the Virginia

Justices in the Sims case and the record in this case, it is apparent to this Court that there are no significant differences which would affect the constitutional question tendered by each.

6. Code of Virginia, 1950, § 53–296.

7. Rev.Code of Virginia of 1819, ch. 171, § 14.

were in the courts of other states.[8] Such geographical classification, he says, is arbitrary, for if the purpose of the statute is to protect society from the depredations of those who have demonstrated a propensity to crime, there is no basis for distinction between prior convictions in one state and prior convictions in others. This, he says, Virginia's General Assembly must have recognized when it amended the statute in 1848. He thus seeks to bring himself within the principle of such cases as Skinner v. Oklahoma, 316 U.S. 535, 62 S.Ct. 1110, 86 L.Ed. 1655.

Considered abstractly, there is superficial appeal in the contention that "geographical" classification of prior convictions as the basis for imposition of additional punishment under the recidivist statute is arbitrary. There are practical reasons for it, however. Indeed, it is probable that Virginia's Director of the Department of Welfare and Institutions does not ordinarily have "knowledge" of out of state prior convictions within the meaning of the statute.

Prisoners are received in the Virginia penitentiary only upon a commitment in the form of a certified copy of the judgment of conviction. These are kept on file and are readily available to the Director when the same prisoner is received in the Virginia Penitentiary for the second or third time. The Director may readily inform himself of the prisoner's prior Virginia convictions, and he has at hand the means of proving at the recidivist hearing the fact of those prior convictions. Additional punishment under the recidivist statute is conditioned upon the recidivist court's finding "that records [of the prior conviction] exist," and that the prisoner before it is the same person who was involved in the prior conviction. As a matter of general law, a finding of the existence of records of prior conviction can be made only if the records, themselves, or exemplified copies, are available and in proper form for submission as evidence of their content.

Officials of Virginia's penitentiary obtain information about prior out of state convictions through FBI reports.[9] When prisoners are received and fingerprinted, the prints are sent to the Federal Bureau of Investigation and a report from that Bureau is obtained. That report, based upon the classification of the fingerprints, would indicate that a recidivist had served a period of confinement at a specified penal institution, but it does not include exemplified copies of the prior judgments of conviction or any other evidence usable by the Director in proceeding against the prisoner under the recidivist statute. This led the Virginia Supreme Court of Appeals in Sims to suggest that there is a distinction between information which officials of the penitentiary have from the FBI reports as to out of state convictions and the knowledge which the Director has, from the exemplified copies of the court records, of prior convictions in the state courts of Virginia. The FBI report to him is only hearsay information which would require further investigation, including search for and receipt of certified copies of official court records, before the information would blossom into the

8. In this case, the Commonwealth has not contested Evans' standing to raise the question. We do not consider it.

9. We have gleaned such information from the reported opinions in the Sims case. What the prison officials receive and in what form is not established on this record. In seeking to show the futility of resort to the state remedy, however, Evans has emphasized the identity of his legal contention with that of Sims, and the absence of any factual controversy. If Evans contended that the factual background was not as reported in the Sims opinions, there would be no alternative to dismissal under § 2254. We are justified, therefore, in treating the facts as reported in Sims as conceded here by Evans.

In the District Court, Evans made no such determined effort to identify himself with Sims and to emphasize the absence of factual differences between the two cases. That is why he suffered dismissal in the District Court; that is what gives the case a different complexion here.

knowledge upon which the statute requires him to act.

Whatever may be said for the distinction between information and knowledge, it is clear that the FBI report gives the Director no practical basis upon which to act. His report of such information to the Circuit Court of the City of Richmond would be futile, for that Court could not act upon it. Unless the Director had armed the prosecutor with the means of proof of the prior conviction, the recidivist proceeding must be aborted, unless it is to become only an inquisition. It would be neither fair nor just to call in prisoners suspected of prior out of state convictions and require them to answer to charges which the prosecutor has no means of proving, and the imposition of additional punishment should not be solely dependent upon a voluntary admission by the prisoner.

If the Director is to obtain usable knowledge of prior out of state convictions, therefore, he must go out and seek it. The statute imposes no such duty upon him. It requires only that he report such knowledge as shall come to him.[10]

It thus appears that the real basis of classification is not geographic, as Evans contends, but practical utility. The Director reports all knowledge which comes to him in the form of competent evidence to establish the facts. He does not report information, which, without further investigation and collection of materials, he has no means of proving.

Some of the penitentiary officials, testifying in the Sims case in the state court about the practice of reporting only prior Virginia convictions, professed ignorance of the reason for the practice. It was in existence when they first assumed their duties, and, they said, they had never questioned it. To the legal mind, aware of the uselessness of reporting to the court unusable information, however, the reason seems obvious. It exists, and its

existence lends reasonableness to the practice, whether or not the incumbent prison officials realized it. The practice, supported by the apparent reason for it, cannot be said to be an arbitrary, geographic classification unreasonably discriminating against prisoners who had been so unforeseeing as to have confined their previous criminal activity to Virginia.

 We agree with the Virginia Supreme Court of Appeals in deciding that the Virginia recidivist statute, as applied in practice, is not an unconstitutional denial of the equal protection of the law.

Affirmed.

---

10. There is no contention that the Fourteenth Amendment prohibits a state proceeding against a recidivist on the basis of usable information readily available to it unless it undertakes the expense and trouble of obtaining usable information, not readily available to it, about every other possible recidivist.