Samuel H. Hofstadter, J.
We affirm unanimously defendants’ conviction of violating subdivision 2 of section 722 of the Penal Law (disorderly conduct). A majority of the court agrees, too, that they were guilty of violating section 1851, which prohibits resisting, delaying or obstructing a public officer in the discharge of his duty. Our view is that the statute should not be contracted *214 to absolve the defendants of unlawful conduct merely because they engaged in what they conceived to be a form of protest.
Lawful protest is an aspect of freedom of speech, which Cabdozo called the matrix of nearly every other form of freedom. But the delicate thing about liberty is that it requires restraints ■ — which make men truly free. To be sure, self-imposed restraints are best, not enforced from outside. However, statutory enactments are often requisite to enforce certain inhibitions. The civilities of protest, as of freedom itself, are essential if the ordered government of an open society is to survive — it may not be discredited by conduct such as these defendants indulged in here, in defiance of the governing law.
The main floor of the New York City City Hall consists of an east wing and west wing, divided by a large central rotunda. The west wing contains the Mayor’s office and offices of other city officials and employees. The entrance to the west wing is through a private hallway 10 to 12 feet wide, not open to the public generally. An iron gate, normally kept locked and guarded by a policeman, is located in front of the hallway and separates the rotunda from the hallway. The lock is released by pressing an electric button.
On Good Friday, March 27, 1964, at about 2:00 p.m., defendants, over the opposition of the detective on duty, forced their way into the hallway, two through the gate, the others over the gate. They thereupon sat down in the corridor; refused to leave when repeatedly requested by the police to do so; and were removed by the police some three quarters of an hour later. In the interval, a large group of people, concededly in excess of 15 in number, massed at the gate watching what was going on inside. The result was complete obstruction of the corridor and its entrance.
Defendants had no appointment with Mayor Wagner. He was not in his office because it was Good Friday — defendants did not and could not expect to see him. Defendants followed defendant Oallendar — when he was told that defendants could not go into the hallway, he sat down and the other defendants did likewise.
A statement was read to each defendant by the police officers several times, to the effect that defendants were violating laws by their presence; if they did not leave, they would be arrested; and, if arrested and did not accompany the police to the police wagon, they would also be charged with resisting arrest. “ Defendants’ only response was that they had come to see the Mayor * * * whereupon defendants were seized and went limp and were carried to the wagons ”.
*215 Defendant Rice admitted that he had his legs linked with defendant Heinegg before his arrest. When picked up by the police, he answered to the question:
“ Q. Did you go limp as you were being picked up? A. Yes, sir.” Going limp upon arrest as part of group action, requiring the arresting officers to carry the group, including each defendant, to the patrol wagon, is manifestly resisting a public officer in the discharge of his duty in violation of section 1851 of the Penal Law.
Section 1851 reads: “ § 1851. Resisting public officer in the discharge of his duty. A person who, in any case or under any circumstances not otherwise specially provided for, wilfully resists, delays, or obstructs a public officer in discharging, or attempting to discharge, a duty of his office, is guilty of a misdemeanor.”
In People v. Knight (35 Misc 2d 216, 222) Magistrate Bayer commented: “ To interfere and obstruct and delay within section 1851 of the Penal Law does not and need not require active resistance and force by the defendants. * * # The arrested party has a duty to submit to a lawful and proper arrest.”
In the oft-cited case of United- States v. McDonald (26 Fed. Cas. 1074), involving a Federal statute similar to section 1851, Dyer, J., charged the jury (p. 1077): “ The statute, however, does not limit the offense to resistance alone, it includes also willful acts of obstruction or opposition; and to obstruct is to interpose obstacles or impediments, to hinder, impede, or in any manner interrupt or prevent, and this term does not necessarily imply the employment of direct force, or the exercise of direct means. It includes any passive, indirect, or circuitous impediments to the service or execution of process; such as hindering or preventing an officer by not opening a door or removing an obstacle or concealing or removing property.” (Emphasis supplied.)
Matter of Bacon (240 Cal. App. 2d 34) was concerned with the student sit-in at Sproul Hall of the University of California campus at Berkeley. The sit-in continued after the building was regularly closed and the sit-ins had been asked to leave. They were thereupon arrested. When each appellant was told that he was under arrest, he went limp and had to be carried out of the building. They were found to have violated California’s penal provisions governing trespass and unlawful assembly and also resisting arrest under a section of the Penal Code, the substantive provision of which is practically identical in language to that before us. The District Court of Appeal affirmed, MoLmARi, J., writing for the unanimous court (p. 53): “ where *216 the arrest is lawful a person arrested may not use passive resistance or interpose any obstacles which in any manner impede, hinder, interrupt, prevent or delay such arrest. We hold, therefore, that a person who goes limp and thereby requires the arresting officer to drag or bodily lift and carry him in order to effect his arrest causes such a delay and obstruction to a laioful arrest as to constitute the offense of resisting an officer ”. (Emphasis supplied.)
(To the same effect State v. Avnayim, 24 Conn. Supp. 7; State v. Neubauer, 2 Conn. Cir. 169).
Section 1851 of the Penal Law explicitly includes delay and obstruction in any form in addition to physical resistance. The obvious intent of such a statute is that the police go about their business without any obstacles put in their way — “ to allow the actions of the police to proceed calmly, efficiently and without difficulty” (State v. Neubauer, supra, p. 173). This purpose defendants delayed and obstructed by their conduct. Not alone did each of these defendants delay and obstruct his own arrest, he also delayed and obstructed the arrest of the others.
We are not persuaded by defendants’ argument that defendants -could only be prosecuted under subdivision 5 of section 242 of the Penal Law (assault to prevent or resist, among other things, apprehension or detention “ of himself, or of any other person”) or section 1825 (resisting an officer by use of force or violence). Section 1851 is in the same article of the Penal Law as section 1825 (art. 170 — Public Offices and Officers) and is the all-embracing section covering any delay, -obstruction or other resistance “ not otherwise specially provided for ” by the statute. Defendants cite no case holding that section 1851 does not apply to obstructing in any fashion one’s own arrest. Indeed, we have heretofore affirmed convictions under that section for the defendant’s action during his own arrest in People v. Goldstein (May, 1966, No. 89) and in People v. Pena (Nov., 1964, No. 428).
The duty of an officer is to bring a violation of the law to a court of justice as promptly as possible. Here, this obligation of the police officers was delayed and frustrated by the defendants. The two charges, disorderly conduct and delaying the officers, represented separate offenses. Defendants’ convictions on both counts do not constitute double punishment for the same act under the authorities (People v. Meldron, 19 N Y 2d 608; People v. Di Lapo, 14 N Y 2d 170; People ex rel. Maurer v. Jackson, 2 N Y 2d 259; People v. Baker, 27 A D 2d 269).
The judgment of conviction should be affirmed and order denying motion to amend minutes affirmed.