UNITED STATES of America ex rel. Albert A. RABY, Petitioner-Appellee,

v.

Joseph I. WOODS, Sheriff of Cook County, Illinois, and Winston M. Moore, Warden of the Cook County Jail, Respondents-Appellants.

No. 18389.

United States Court of Appeals, Seventh Circuit.

March 5, 1971.

John R. McClory, Chicago, Ill., Edward V. Hanrahan, State's Atty., County of Cook, Chicago, Ill., for appellants; Elmer C. Kissane, Chief of the Criminal Division, of counsel.

Leo E. Holt and Maria A. Elden, Chicago, Ill., for appellee.

Before MAJOR, Senior Circuit Judge, and CUMMINGS and PELL, Circuit Judges.

MAJOR, Senior Circuit Judge.

This case had its genesis in a civil rights movement participated in by a large number of persons, of whom Albert A. Raby, petitioner, was a leader. The participants, including Raby, marched to the intersection of Randolph and La Salle in the City of Chicago, Illinois, at about 5 p. m. on June 28, 1965, at the peak of the evening rush hour, where a number either sat or lay in the intersection, thereby blocking all traffic for a considerable time. A number of policemen who had been called to the scene demanded that they vacate the intersection. Those who refused to do so, including Raby, were placed under arrest.

Raby was charged in the Circuit Court of Cook County, Illinois, with the offenses of disorderly conduct and resisting arrest. He was tried and convicted of those charges by a jury, fined $500.00 for disorderly conduct and sentenced to serve three months in the Cook County Jail for resisting arrest. Raby, raising constitutional issues, appealed directly to the Illinois Supreme Court, which affirmed his conviction. People v. Raby, 40 Ill.2d 392, 240 N.E.2d 595. The United States Supreme Court denied certiorari, 393 U.S. 1083, 89 S.Ct. 867, 21 L.Ed. 2d 776.

The instant proceeding was commenced by a petition on behalf of Raby for a writ of habeas corpus, pursuant to 28 U.S.C.A. Sec. 2241, which was later supplanted by an amended petition in which he alleged that both of the State statutes under which he was convicted were unconstitutional and that he was denied his constitutional rights in other ways. The District Court conducted a hearing which in effect amounted to a review of the decision of the Illinois Supreme Court. The transcript of the State Court proceedings was introduced in evidence and the Court heard the same witnesses who had testified in the State Court trial.

After the decision of the Illinois Supreme Court, Raby paid the fine imposed upon the disorderly conduct charge. The District Court decided adversely to Raby on all constitutional issues except as stated in its order, "The Illinois resistance of arrest statute is found constitutional, but the court's instructions to the jury regarding it were so inadequate that petitioner was deprived of due process of law guaranteed by the 14th Amendment * * *." The order also stated, "The court's memorandum opinion read into the record, will stand as findings of fact and conclusions of law herein."

Thus, the sole basis for the order of the District Court discharging Raby is that he was deprived of a constitutional right by reason of the instruction which the Trial Court gave to the jury, as follows:

"The Jury is instructed that there was in force in the State of Illinois at

the time of the alleged occurrence in question a statute known as resisting or obstructing a peace officer under Chapter 38, Section 31–1 of the Illinois Revised Statutes as amended, which statute provides in part that it shall be unlawful for a person knowingly to resist or obstruct the performance by one known to the person to be a peace officer of any authorized act within his official capacity.

"You are instructed that the defendant, Albert Raby, is charged with committing the offense of obstructing and resisting a peace officer on June 28, 1965, at La Salle and Randolph Streets in that he resisted a peace officer in the performance of his duty by: when placed under arrest by said officer, refused to voluntarily accompany arresting officer and had to be physically carried away in violation of Chapter 38, Section 31–1, Illinois Revised Statutes and against the peace and dignity of the People of the State of Illinois, which charge said defendant denies.

"The Court instructs the Jury, as a matter of Law, that resisting a peace officer in the performance of his duty may be passive as well as active. To interfere and obstruct does not require active resistance and force."

It is the last paragraph of this instruction, that the resistance "may be passive as well as active," upon which the constitutional attack is based. The Court's memorandum stated:

"I do not find that the use of the phrase 'passive resistance' may not be included in the instructions of the judge to the jury, but the instructions must be broad enough that the jury can understand what is meant at law by 'passive resistance' in order that it not include conduct which is not in fact affirmative conduct on the part of the arrested person."

Thus, the Court recognized that the statute encompassed passive resistance, providing the jury was properly instructed as to its meaning. This recognition was made in spite of the Court's statement made for the record at the conclusion of the hearing:

"I hold that there is no such thing [passive resistance], despite the language to be found in the cases, to-wit, the *Landry* case, written by a three-judge court of this court, and the Supreme Court decision in the *Raby* case and in the words and the language of the trial judge in this case, on the state level, there is no such thing as passive resistance."

In Landry et al. v. Daley, 280 F.Supp. 938, a three-judge panel [1] of the same Court from which this appeal comes, in a well considered opinion held that resistance can be passive as well as active, naming as one of the examples, "merely going limp." This opinion was quoted from at some length and its reasoning approved by the Illinois Supreme Court in People v. Raby, *supra*. In response to Raby's attack on the resisting arrest provision upon the ground that it fixed no standards for the ascertainment of guilt, that Court stated (240 N.E.2d 599):

"This attack was recently rejected in Landry v. Daley (N.D.Ill.1968), 280 F.Supp. 938, 959. In that case the court emphasized that the statute requires knowing resistance or obstruction, '[which] considerably narrows the scope of the enactment by exempting innocent or inadvertent conduct from its proscription' (280 F.Supp. at 959). The court further noted that the statutory terms convey commonly recognized meanings. 'Resisting' or 'resistance' means 'withstanding the force or effect of' or the 'exertion of oneself to counteract or defeat'. 'Obstruct' means 'to be or come in the way of'. These terms are alike in that they imply some physical act or exertion. Given a reasonable and natural construction, these terms do not proscribe mere argument with a police-

1. This panel consisted of Hastings, Circuit Judge, and Hoffman and Will, District Judges. The opinion was written by Judge Will.

/9j

man about the validity of an arrest or other police action, but proscribe only some physical act which imposes an obstacle which may impede, hinder, interrupt, prevent or delay the performance of the officer's duties, such as going limp, forcefully resisting arrest or physically aiding a third party to avoid arrest.' (280 F.Supp. at 959). We agree with these observations, and we hold that section 31–1 is neither vague nor overbroad."

The same Court, relative to the instruction here under attack, stated (240 N.E.2d 601):

"The defendant argues that it was error to give this instruction and to refuse an instruction tendered by the defendant which advised the jury of certain dictionary definitions of the term 'resist'. The refused instruction emphasized that the term 'resist' included the notion of effective opposition: 'to oppose actively; to strive, fight, argue or work against; to endeavor to counteract, defeat or frustrate.' In this case the police officers described the defendant's conduct as 'going limp' so that he had to be carried to the police van. The defendant testified that he went into the intersection with others in the group, sat down and remained there for twenty minutes until he was removed by police officers. While the defendant testified that he did not know what 'going limp' meant, he also testified that he became 'relaxed,' by which he meant that he was 'totally immobile' and in no way resisted or gave any muscular resistance. With the record in this condition, the rulings of the trial court upon these instructions were correct." ·

Cases from other jurisdictions are of similar purport. In In Re Bacon, 240 Cal.App.2d 34, 49 Cal.Rptr. 322, the Court stated:

"The present case is controlled by the principles hereinbefore discussed to the effect that where the arrest is lawful a person arrested may not use passive resistance or interpose any obstacles which in any manner impede, hinder, interrupt, prevent or delay such arrest.

"We hold, therefore, that a person who goes limp and therefore requires the arresting officer to drag or bodily lift and carry him in order to effect his arrest causes such a delay and obstruction to a lawful arrest as to constitute the offense of resisting an officer * * *."

To the same effect, People v. Knight, 35 Misc.2d 216, 228 N.Y.S.2d 981, and People v. Crayton, 55 Misc.2d 213, 284 N.Y.S.2d 672. See also our opinion in United States v. Woodard, 376 F.2d 136, 140.

The District Court attempted to distinguish these cases on the ground that each was dealing with a differently worded statute. Even so, they enunciate a wholesome principle of law, that is, that a person under lawful arrest who in any manner, either actively or passively, impedes, interrupts or delays such arrest is guilty of the offense of resisting an officer.

A reading of the transcript of the hearing before the District Court indicates that the Illinois Supreme Court was on trial. That Court in relating the facts stated (240 N.E.2d 597):

"To arrest the defendant, the officers had to untangle him from others with whom he had intertwined his arms and legs. He then 'went limp' and had to be carried to a police van."

It was that factual statement with which the District Court appears to have been primarily concerned at the commencement of the hearing. That Court made inquiry as to "what the facts are with relation to whether or not he entwined his arms around the legs of these other people," and proceeded to hear testimony on that issue. Officer Lynskey testified that at the time of Raby's arrest, his "arms were in front—or to the side of him intertwined with those of the two people next to him, with his fists or his fingers enclinched," and "While the officers were trying to remove him from the rear his arms were waving because they were trying to ex-

tricate him from these two other persons' arms. At this time also there was some kicking of the legs because there was an attempt to link the legs of Mr. Raby with the person on each side of him." Officer Becker testified that when Raby was placed under arrest he was asked if he would go of his own accord and that he made no response; that Raby's arms were entwined around another person, and that when Becker freed Raby's arms "He had his arms flailing about and he was kicking his feet."

Raby testified that he and sixty-five other persons sat in the street and that he expected to be arrested; that he did not recall that his hands and feet were ever entwined with those seated next to him. However, the State Court transcript reveals that he testified as follows:

"Q. Did your hands remain interlocked, did you lock your hands with anyone while you were in the street.

A. I did not lock myself.

Q. Did anyone lock their hands or arms with yours?

A. There may have been some.

Q. Do you recall?

A. Yes.

Q. Were there any who locked arms or legs with you?

A. Yes, there was people who locked arms or legs with mine."

In the instant proceeding, Raby testified:

"Q. Now, Mr. Raby, what was your position at the point you were first approached by a police officer?

A. I was sitting in the intersection.

* * * * * *

Q. Describe for his Honor as nearly as you can recall exactly what happened from the time the first police officer touched you until you were in the police van.

A. Officers came to me, said that I was under arrest, asked if I would walk to the van. I indicated I would not.

Q. How did you indicate that?

A. By giving a no answer to their question, and then they proceeded to pick me up, four officers.

* * * * * *

The Court: Was it your intention at the time that you were in the park that if the circumstances should justify it in your mind that you would seek to be arrested?

The Witness: Yes, sir, it was."

At the conclusion of the hearing, the District Court announced its refusal to consider the evidence of entwining, twisting and squirming for the reason that there was too much conflict on this point, and, "Why should they entwine their legs, and all of that, just to make it difficult? They sat down for the purpose of being arrested for disorderly. So that goes out the window."

We think the District Court usurped the function of the jury which was the judge of the credibility of the witnesses and the weight to be given to their testimony. The jury had ample evidence from which to find that Raby at the time of his arrest had his arms locked and his legs entwined with persons who lay by his side for the purpose of impeding his arrest. It is difficult to discern how the jury could have found otherwise.

After rejecting the testimony as to Raby's conduct at the time of his arrest, the District Court stated:

"But what happened between the time he was picked up and the time he was set on his feet is the thing. Did he merely or did he intentionally or did he accidentally go limp. * * *

"All of the evidence indicates that he was not limp at the time he was picked up. Sitting on the ground is not being limp. At the time he was picked up he was not limp. Somewhere between there and the time he was put on his feet he went limp. Was it intentional or was it an accident, unintentional? This is the issue. This is the case."

In our view, this reasoning is clearly fallacious. The fact that courts have

referred to "going limp" as a means of passive resistance does not exclude other conduct which constitutes resistance. We are unable to discern any difference between voluntarily going limp as a means of resistance, and sitting or lying in the street. The Illinois Supreme Court (240 N.E.2d) page 599 construed the statute as proscribing "only some physical act which imposes an obstacle which may impede, hinder, interrupt, prevent or delay the performance of the officer's duties * * *."

The record leaves no doubt but that Raby, on his own testimony, placed himself in the street intersection for the purpose of obstructing traffic, with knowledge that he was violating the law and would be arrested. He had knowledge that the police officers when they placed him under arrest and requested that he vacate the street were acting in the performance of their duties. He purposely placed himself in a physical posture so as to hinder and interrupt such performance, and to create a situation which necessarily required that he be removed by force.

In our judgment, it makes no difference whether he accomplished his purpose by sitting or lying or voluntarily going limp. In any event, his conduct hindered, interrupted and delayed the officers in the performance of their duties. There is no reasonable basis for the thought that his conduct was for any other purpose. In our view, he was clearly proven guilty of resisting arrest, and this is so whether his conduct be characterized as active or passive. We agree with the Illinois Supreme Court in its affirmance of Raby's conviction.

■ Raby here advances the further contention that he should be discharged from the custody of respondents on the ground that his State trial placed him in double jeopardy, in violation of the Fifth Amendment. Relative to this contention Raby on brief states:

"Prior to the commencement of the State trial the petitioner [Raby] presented to the State Court a motion to dismiss the complaints against him based upon a prior trial in the state court on charges of violating a municipal ordinance of the City of Chicago. Petitioner alleged that the State trial out of which his convictions grew was violative of the Fifth and Fourteenth Amendments to the United States Constitution, in that the City of Chicago had tried petitioner for obstructing traffic which offense grew out of the very same conduct which was the subject of the second State trial. Petitioner alleged that the instant state trial placed him twice in jeopardy for the same conduct. This contention was denied by the State trial court."

Raby in his appeal to the Illinois Supreme Court did not raise this issue nor did he do so in the District Court in the instant matter. Admittedly, therefore, he has not shown an exhaustion of his State Court remedies. His excuse for not raising the issue before the Illinois Supreme Court is that a long line of Illinois decisions have held that a municipality and the State could constitutionally punish for the same conduct and that there was no reason to think that the Illinois Supreme Court would have decided differently in Raby's case. 28 U.S.C.A. Sec. 2254 provides that exhaustion is not required where there is "the existence of circumstances rendering such [State] process ineffective to protect the rights of the prisoner."

This belated constitutional contention is based on the decision of the United States Supreme Court in Waller v. Florida, 397 U.S. 387, 90 S.Ct. 1184, 25 L.Ed. 2d 435, decided after the entry of the order appealed from. The contention raises only a question of law, as the facts upon which it is predicated are not in dispute. Raby suggests that under the circumstances it would be an act of futility to remand the case to the District Court for its consideration. With this suggestion we agree, particularly in view of the fact that respondents on brief make no objection to our considering the issue on its merits. See Evans v. Cunningham, 4 Cir., 335 F.2d 491.

Although it involves some repetition, we think it pertinent to state the facts upon which the double jeopardy issue is based. Prior to the State Court trial, Raby was convicted of obstructing traffic in violation of a municipal ordinance of the City of Chicago. In the State Court trial he was convicted of disorderly conduct and resisting arrest. The fine imposed on the disorderly conduct charge was paid, and Raby presents no challenge to the validity of that conviction in this proceeding. Thus, the issue is whether the charge of resisting arrest in violation of an Illinois statute made in the State Court exposed Raby to double jeopardy because of his conviction on the charge of obstructing traffic in violation of a City ordinance.

Raby on brief states, "The Waller court opinion very clearly holds that a trial based upon a state statute subsequent to trial by a municipality for the same offense is constitutionally impermissible." We do not fault that statement but it must be considered in connection with the Court's concluding statement (397 U. S. page 395, 90 S.Ct. page 1189).

"We decide only that the Florida courts were in error to the extent of holding that—

'even if a person has been tried in a municipal court for the identical offense with which he is charged in a state court, this would not be a bar to the prosecution of such person in the proper state court.' "

In an explanatory footnote, the Court stated (page 395, 90 S.Ct. page 1189):

"If petitioner has committed offenses not embraced within the charges against him in the municipal court he may, or may not, be subject to further prosecution depending on statutes of limitation and other restrictions not covered by the double jeopardy restraints of the Constitutions of Florida and of the United States."

It appears obvious that the charge of resisting arrest was not embraced with that of obstructing traffic and that the other restrictions of which the Court speaks are not present.

In People v. Raby, 240 N.E.2d 595, page 602, the Illinois Supreme Court held that the offenses of disorderly conduct and resisting arrest were separate and distinct as more than a single act was involved, and in doing so stated:

"The offense of disorderly conduct was complete before there was any attempt to make an arrest and there was no necessary relationship between the two offenses."

Likewise, the offense of obstructing traffic by Raby was complete prior to the time that he committed the offense of resisting arrest. The two offenses were separate and distinct; therefore, the decision of the Supreme Court in *Waller* is not controlling.

Finally, Raby seeks to buttress his appraisement of the *Waller* decision with Sec. 3–3, Chapter 38, Illinois Revised Statutes, which provides:

"(a) When the *same conduct* of a defendant may establish the commission of more than one offense, the defendant *may* be prosecuted for each such offense.

"(b) If the several offenses are known to the *proper prosecuting officer* at the time of commencing the prosecution and are within the jurisdiction of a single court, they must be prosecuted in a single prosecution, except as provided in Subsection (c), *if they are based on the same act.*

"(c) When 2 or more offenses are charged as required by Subsection (b), the court in the interest of justice may order that one or more of such charges shall be tried separately." (Italics supplied.)

At the time of this enactment, numerous terms were defined. Sec. 2–12, Chapter 38, provides: " 'Offense' means a violation of any penal statute of this State." It thus appears that the term "offense" as used in Sec. 3–3 applies only to prosecutions by the State and not those by a municipal authority.

Section 3–3, paragraph (a), provides that a defendant may be prosecuted for each offense where they stem from the "same conduct." Paragraph (b), particularly relied upon by Raby, provides that such offenses "must be prosecuted in a single prosecution," providing the several offenses are known to the "proper prosecuting officer * * * if they are based on the same act."

As we have already shown in distinguishing the *Waller* decision, the City charge of obstructing traffic and the State charge of resisting an officer were separate and distinct offenses; they were not "based on the same act." In our view, this Illinois statute furnishes no support for Raby's double jeopardy contention.

The order appealed from is reversed and the cause remanded, with directions that the petition for writ of habeas corpus be denied, and that the order discharging Raby from custody be vacated.